109 P.3d 1104

**Edward M. LETTUNICH, d/b/a Lettunich Land & Livestock Succeeded by Lettunich Land & Livestock, LLC, Plaintiff–Appellant,**

v.

**KEY BANK NATIONAL ASSOCIATION, a federally chartered corporation authorized to do business in Idaho, Defendant–Respondent.**

No. 30180.

Supreme Court of Idaho,
Boise, January 2005 Term.

March 28, 2005.

White Peterson, PA, Nampa, for appellant. T. Guy Hallam Jr. argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd, Boise, for respondent. Warren E. Jones argued.

TROUT, Justice.

Edward M. Lettunich, d/b/a/ Lettunich Land & Livestock, succeeded by Lettunich Land & Livestock, LLC (Lettunich), appeals the district court's grant of summary judgment in favor of KeyBank National Association (KeyBank). This Court affirms the decision of the district court.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Lettunich was in a cattle business partnership with his brother, which had previously operated as a family business for many years. After differences arose, the brothers decided to dissolve the partnership and, as part of that dissolution, a court ordered the cattle sold at auction. The sale was scheduled for April 26–28, 2000. Lettunich wanted to resolve the dissolution by buying out his brother's interest in the partnership's real property as well as the Black Angus cattle the partnership had selectively bred. Lettunich approached KeyBank in March 2000 to negotiate a loan package including the real property, the cattle and an operating loan. Lettunich met with Brian Faulks, KeyBank's relationship manager, to explain the nature of his operations and the type of financing he would need. The proposed package consisted of three separate loans: one for the real estate, a term loan for the cattle and an operating line of credit for the cattle business. Each loan was to exceed $50,000. On April 25, Faulks sent Lettunich a separate commitment letter for each loan, each of which contained the following clauses:

> This commitment and the two related commitments supersede all oral negotiations and oral agreements between us with respect to the subject matter hereof. No waiver of any provisions hereof shall be effective unless in writing and then only in the specific instance and for the specific purpose specified.

> Pursuant to Idaho Code Section 9–505(5), a promise or commitment to lend money or to grant or extend credit in an original principal amount of $50,000 or more shall be made in writing or the agreement is invalid.

> This commitment and the two related commitments have been issued in response to Borrower's request. All three commitments (loans) are interdependent to the extent that the borrowers must accept and commit to all three in order for KeyBank to honor this particular commitment.

Conditions for all three loans, jointly and severally, apply.

The commitment letter relating to the real estate loan named Larry Williams as a borrower and required his signature, in addition to Lettunich's, as a guarantor. The cow term loan required that Larry Williams provide a $500,000 guaranty. Because Lettunich and Williams could not agree on their future management roles or ownership interests, Williams did not sign any of the commitment letters.

On April 25, the day before the court-ordered cattle sale, Lettunich and his brother had still not reached an agreement regarding the buy-out and Lettunich's brother would not agree to delay the sale. That evening, Lettunich met with Faulks and discussed the breakdown of the deal between Lettunich and his brother. In his affidavit, Lettunich states:

> Because [my brother] would not agree to a delay of the dispersion sale, Mr. Faulks and I decided that I should purchase cattle at the dispersion sale even though the ranch sale had fallen through.

> During that conversation, I inquired as to whether KeyBank would provide financing in the form of a Cattle Term Loan and operating line which would allow me to purchase cattle at the dispersion sale that day, as well as fund my subsequent ranching operations.

> Based on my, and other family members', discussions with him, Mr. Faulks knew that I wanted to purchase cattle at the cattle dispersion sale if funding was available.

> In response, Mr. Faulks informed me that KeyBank would provide that financing for my purchase of cattle and subsequent cattle operations, and that I should move forward with my plan to purchase cattle at the sale because the cattle would be paid for with the KeyBank Loan.

> During the 2000 Cattle Sale, I purchased certain registered cattle and livestock in reliance upon the representations of Key-Bank and Mr. Faulks that my request for financing was approved and the loans would be funded.

I relied on my ongoing relationship with Brian Faulks and Faulks' specific representation that KeyBank would finance the purchase of the cattle, and provide an operating line for caring for the newly-purchased cattle. I never would have purchased the cattle at the dispersion sale if I had known that KeyBank was not going to honor its commitment.

On the evening of April 26, 2000, following the first day of the sale, Brian Faulks came to the ranch to speak with me about the sale (Brian had attended the sale earlier in the day). I asked Mr. Faulks if I should continue to purchase cattle when the sale continued the following day. Mr. Faulks told me to "keep going" and assured me that KeyBank would fund a term loan and operating line and that I should continue to purchase cattle at the sale. Again, based on this representation from Mr. Faulk, (sic) I continued to purchase cattle, ultimately buying over $400,000 in registered Angus cows.

Subsequent to the purchase of the cattle, KeyBank refused to fund the cattle term loan and operating line of credit.

Lettunich signed all three commitment letters on April 26, the first day of the cattle sale. Several days after Lettunich purchased the cattle, KeyBank sent Lettunich a letter which read, "[t]hank you for applying to us for credit. We have given your request careful consideration, and regret that we are unable to extend credit to you at this time."

Lettunich filed suit against KeyBank claiming breach of an oral contract, breach of the covenant of good faith and fair dealing, and fraud. KeyBank moved for summary judgment on the ground that the statute of frauds barred Lettunich's claims. Lettunich argued the doctrines of part performance, equitable estoppel and promissory estoppel prevented KeyBank from raising the statute of frauds as a defense. The district court granted KeyBank's motion for summary judgment holding the statute of frauds bars enforcement of the alleged contract; Lettunich's part performance did not preclude application of the statute of frauds; the doctrine of equitable estoppel did not preclude application of the statute of frauds; the cove-nant of good faith and fair dealing did not apply in light of the court's finding that the oral promise to loan money was unenforceable; and no issue of fact existed as to Lettunich's fraud claim. In a subsequent order, the district court granted KeyBank's request for attorney fees and costs under I.C. § 12–120(3). Lettunich filed a timely appeal.

## II.

## STANDARD OF REVIEW

On an appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on a motion for summary judgment. *State v. Rubbermaid, Inc.,* 129 Idaho 353, 355–56, 924 P.2d 615, 617–18 (1996). The Court must liberally construe facts in the existing record in favor of the nonmoving party and draw all reasonable inferences from the record in favor of the nonmoving party. *Rubbermaid, Inc.,* 129 Idaho at 356, 924 P.2d at 618. If there are conflicting inferences contained in the record or if reasonable minds might reach different conclusions, summary judgment must be denied. *Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). When questions of law are presented, this Court exercises free review and is not bound by findings of the district court but is free to draw its own conclusions from the evidence presented. *Mutual of Enumclaw v. Box,* 127 Idaho 851, 852, 908 P.2d 153, 154 (1995). "The question of a trial courts compliance with the rules of civil procedure relating to the recovery of attorney fees or costs is one of law upon which an appellate court exercises free review." *J.R. Simplot Co. v. Chemetics International, Inc.,* 130 Idaho 255, 257, 939 P.2d 574, 576 (1997) (citing *Harney v. Weatherby,* 116 Idaho 904, 906, 781 P.2d 241, 243 (Ct.App.1989)).

## III.

## ANALYSIS

### A. Statute of Frauds

The relevant section of the statute of frauds provides:

In the following cases, the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

. . .

■ (5) A promise or commitment to lend money or to grant or extend credit in an original principal amount of fifty thousand dollars ($50,000) or more made by a person or entity engaged in the business of lending money or extending credit.

I.C. § 9–505(5). Each of the three loans negotiated by Lettunich exceeded $50,000 and, thus, the statute of frauds provision applies. The commitment letters cannot be used to satisfy the writing requirement of I.C. § 9–505(5) because they were never executed. Each letter stated that the borrowers "must accept and commit to all three" loans and the "[c]onditions for all three loans, jointly and severally apply." Because Larry Williams never signed as a guarantor on the real estate loan and never provided the $500,000 guaranty for the cattle term loan, none of the commitment letters ever became effective.

■ Lettunich argues there was an oral agreement between the parties. Viewing the evidence in a light most favorable to Lettunich, even if we infer there was an oral agreement between the parties at least as far as loaning money to purchase cattle, the oral agreement is invalid because it clearly violates I.C. § 9–505(5). The next two issues address whether there are any exceptions to the statute of frauds that would permit enforcement of an oral agreement.

## B. Part Performance and Equitable Estoppel

■ Lettunich argues the doctrine of part performance takes the oral agreement outside the requirements of the statute of frauds and that KeyBank is equitably estopped from raising the statute of frauds as a defense. "The doctrines of equitable estoppel and part performance are viewed together. Under Idaho law, part performance per-

se does not remove a contract from the operation of the statute of frauds. Rather, '[t]he doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel.' " *Sword v. Sweet*, 140 Idaho 242, 92 P.3d 492, 499 (2004) (quoting *Frantz v. Parke*, 111 Idaho 1005, 1007–08, 729 P.2d 1068, 1070–71 (Ct.App. 1986)). To be specifically enforced by operation of the doctrine of part performance, an oral agreement "must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 723, 874 P.2d 528, 534 (1994).

■ Even though it could be inferred that Lettunich partially performed by purchasing cattle at the sale, there is no evidence in the record of a complete and enforceable agreement. For example, there is no indication of the amount of the loan, the interest rate, the disbursement schedule, the terms of repayment, the security for the loan, or the parties' rights after default. While none of these terms individually may be determinative, the lack of all of them in this case makes the oral agreement to lend money vague, incomplete and unenforceable. Consequently, the doctrine of part performance does not apply to this case.

For the same reason, the doctrine of equitable estoppel does not apply. Equitable estoppel assumes the existence of a complete agreement, which is lacking here. Therefore, we need not address the issue of whether equitable estoppel even applies as an exception to I.C. § 9–505(5). The district court's holding that part performance and equitable estoppel do not apply is affirmed.

## C. Promissory Estoppel

■ Lettunich argues promissory estoppel should be used in this case to prevent KeyBank from denying the enforceability of an oral promise. Again, there was no complete promise here to be enforced. Promissory estoppel is simply a substitute for consideration, not a substitute for an agreement between parties. *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 68, 625 P.2d 417,

422 (1981). Consideration includes "action by the promisee which is bargained for and given in exchange for the promise." *Day v. Mortgage Ins. Corp.*, 91 Idaho 605, 607, 428 P.2d 524, 526 (1967). It may also consist of a "detriment to the promisee or a benefit to the promisor." *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho 599, 603, 514 P.2d 594, 598 (1973) (citations omitted). In this case, Lettunich clearly suffered a detriment when he purchased cattle without a way to pay for them. The doctrine of promissory estoppel is of no consequence in this case because there is evidence of adequate consideration. What is lacking is a sufficiently definite agreement. *Black Canyon Racquetball v. First Nat'l*, 119 Idaho 171, 178, 804 P.2d 900, 907 (1991).

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing

 "The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract." *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000) (other citations omitted). It "arises only regarding terms agreed to by the parties." *Taylor v. Browning*, 129 Idaho 483, 490, 927 P.2d 873, 880 (1996) (citing *Idaho First Nat'l Bank v. Bliss Valley Foods*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991)). "The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement...." *Idaho Power Co.*, 134 Idaho at 750, 9 P.3d at 1216. Because the alleged oral agreement between Lettunich and KeyBank is not enforceable, there are no obligations imposed by the agreement that the parties are required to perform in good faith. Therefore, the district court's grant of summary judgment in favor of KeyBank on the claim for breach of the implied covenant of good faith and fair dealing is affirmed.

### E. Fraud

 Fraud requires: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002) (citing *Hines v. Hines*, 129 Idaho 847, 851, 934 P.2d 20, 24 (1997)). Even assuming Lettunich sufficiently pled a claim for fraud, there is no indication in the record that Lettunich was justified in relying upon any oral representations made by KeyBank. Lettunich clearly knew that under I.C. § 9–505(5), KeyBank could not promise or commit to lend money unless it did so in writing. Lettunich signed the commitment letters that paraphrased I.C. § 9–505(5) on the same day Faulks made the alleged oral representations to provide funding. Although KeyBank's conduct and oral representations about providing funding, if true, are troubling, it is clear that Lettunich knew KeyBank could not promise or commit to lend money unless it did so in writing. Therefore, Lettunich was not justified in relying on KeyBank's oral representations nor was he ignorant of the falsity of KeyBank's oral representations. The district court's grant of summary judgment on the fraud claim is affirmed.[1]

### F. Attorney Fees and Costs

 The district court awarded KeyBank attorney fees and costs pursuant to I.C. § 12–120(3), finding that there was a commercial transaction. In order for a prevailing party to recover attorney fees under this provision, "[t]he critical test is whether the commercial transaction comprises the gravamen of the lawsuit; the commercial transaction must be integral to the claim and constitute a basis on which the party is attempting

1. It should be noted that in ruling on the motion for summary judgment, the district court's order referred to the clear and convincing standard. Although prevailing on an action for fraud or misrepresentation requires the elements "be established by clear and convincing evidence" *Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002), "traditional *I.R.C.P.* 56(c) summary judgment principles and standards govern the granting of summary judgment on the issues of fraud and intentional misrepresentation." *G & M Farms v. Funk Irr. Co.*, 119 Idaho 514, 518, 808 P.2d 851, 855 (1991) (citations omitted). The end result in this case is not changed, however, because two of the elements of fraud were missing.

to recover." *Bingham v. Montane Resource Associates,* 133 Idaho 420, 426, 987 P.2d 1035, 1041 (1999)(other citations omitted). While Lettunich argues that the fraud claim is not a commercial transaction, the fact is, all of Lettunich's claims arise within the commercial context of Lettunich attempting to obtain a loan for his business. The fraud claim is simply another aspect of Lettunich's claim that he purchased cattle at the sale as a result of KeyBank's representations. All of this is integral to the commercial transaction between KeyBank and Lettunich. The district court's award of attorney fees under I.C. § 12–120(3) was proper.

### G. Attorney Fees on Appeal

"This Court has interpreted I.C. § 12–120(3) to mandate the award of attorney fees on appeal as well as at trial." *Hummer v. Evans,* 132 Idaho 830, 833, 979 P.2d 1188, 1191 (1999) (citing *J.R. Simplot Co. v. Chemetics International, Inc.,* 130 Idaho 255, 258, 939 P.2d 574, 577 (1997)). Because the district court's order is affirmed in its entirety, this Court also award attorney fees on appeal to KeyBank.

### IV.

### CONCLUSION

Idaho Code Section 9–505(5) bars enforcement of the oral agreement alleged here. The district court properly held Lettunich's part performance does not provide an exception to the statute of frauds and equitable estoppel is not applicable. Because there was no binding contract, the district court's order dismissing the claim for breach of the implied covenant of good faith and fair dealing is also affirmed. The district court's order dismissing the fraud claim is affirmed. The award of attorney fees below is affirmed and KeyBank is awarded its attorney fees and costs on appeal.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.

