162 P.3d 772

Frank L. CHAPIN and Sydney L. Chapin, husband and wife, aka Sydney Gutierrez–Chapin, Plaintiffs–Appellants,

and

Financial Management Services, Inc., an Idaho corporation; and S and F, LLC., an Idaho Limited Liability Company, Plaintiffs,

v.

Robert M. LINDEN, Jr., and Patricia A. Linden, husband and wife, Defendants–Respondents.

No. 32946.

Supreme Court of Idaho, Coeur d'Alene, April 2007 Term.

June 27, 2007.

Featherston Law Firm, Chtd., Sandpoint, for appellants. Brent C. Featherston argued.

Winston & Cashatt, Spokane, Washington, for respondents. Brian T. McGinn argued.

TROUT, Justice.

Appellants Frank and Sydney Chapin (the Chapins) appeal from the district court's order granting summary judgment to Respondents Robert and Patricia Linden (the Lindens) in a dispute over an alleged contract to convey property.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994, the Lindens sold a 40–acre parcel of pasture and farmland (the Property) located in Bonner County to Financial Management Services, Inc. (FMS), an Idaho corporation wholly owned by the Chapins. FMS executed an installment note for the balance of the purchase price, $80,000, and the note was secured by a real estate mortgage. In April 2000, FMS conveyed the Property to S and F, LLC. (S and F), an Idaho limited liability company, also wholly owned by the Chapins. The Chapins personally paid rents to S and F, which in turn made the payments on the Property to the Lindens. When the Chapins filed bankruptcy, they ceased making rent payments to S and F, and S and F in turn stopped making the necessary payments to the Lindens and consequently defaulted on the mortgage.

The Lindens filed suit against FMS and S and F for monies due and owing and foreclosure of the real estate mortgage in November 2002. FMS and S and F failed to answer, and a default judgment and decree of foreclosure was entered on April 3, 2003. A sheriff's sale occurred on May 28, 2003, where the Lindens re-acquired the property subject to the Chapins' right of redemption.[1] The Chapins' right of redemption was scheduled to expire on May 28, 2004, one year from the date of the sale.

---

1. Although there is some dispute as to whether the Chapins ultimately held the right of redemption individually or as corporate officers on behalf of S and F, both are named plaintiffs in this action and for the purposes of this opinion, we address them hereafter collectively as "the Chapins."

On May 27, 2004, one day before the expiration of the Chapins' right of redemption, the Chapins, through their attorney, made a demand for an accounting. The demand triggered the addition of five working days to the redemption period, pushing the deadline to June 7, 2004. Around 1:00 p.m. on June 7, 2004, the Chapins, again through their attorney, initiated a telephone discussion with the Lindens' attorney. In lieu of exercising their redemption rights, the Chapins sought to enter into a contract that would allow them to purchase the Property directly from the Lindens after the redemption period expired. The Chapins offered to purchase the property from the Lindens for $90,000, rather than exercising the right of redemption. That afternoon, the Lindens' attorney relayed the offer to the Lindens, who rejected it and directed their attorney to counteroffer a sale price of $125,000, with a $30,000 down payment and the balance amortized over 30 years at the rate of 8% per year, payable in five years.

In response to the Lindens' offer, the Chapins, through their counsel, contacted the Lindens' attorney around 3:38 p.m. that same day to accept the offer and also propose additional terms. During the telephone call in which the Chapins allege they accepted the Lindens' counteroffer, the Chapins' attorney asked whether the Lindens would agree to two additional provisions. First, the Chapins wanted the contract to allow for prepayment without penalty. Second, the Chapins asked that the contract provide for partial deed release upon payment of one-third of the total purchase price, so the Chapins would have the option of subdividing the property into three parcels and then selling a parcel before the contract was fully paid. The Lindens' attorney stated that he would propose the terms to his clients; however, at 3:56 p.m., he called the Chapins' attorney back and left a message indicating that he was unable to reach the Lindens "that day or anytime shortly." He further advised that he was headed to a doctor's appointment and that he would get back to the Chapins' attorney by 5:00 p.m. The parties had no further communication that day. The Chapins' attorney testified that at that point the provisions regarding the prepayment penalty and the partial deed release "were, I guess, open, for lack of a better word." The Lindens did not respond to the Chapins' last request conveyed in the 3:38 p.m. telephone call; in fact, the Chapins did not receive any response until two days later. The Chapins never exercised their right to redeem through S and F. The Lindens concluded that no contract had been formed and that the Property now belonged to them.

Following the expiration of the Chapins' right of redemption, some additional conversations between the attorneys took place. Initially, the Lindens' attorney indicated that his clients would agree to at least some of the new terms. The next day, however, he notified the Chapins' attorney that the Lindens had changed their mind and no longer desired to reach any type of agreement with the Chapins. The Lindens' attorney informed the Chapins' attorney that the Lindens would be listing the Property for sale.

The Chapins then filed suit against the Lindens, arguing that they had reached an agreement on the afternoon of the last day to redeem and they were therefore entitled to have the contract specifically enforced. The Lindens answered that no enforceable agreement had been formed and the Chapins' claims were barred by the statute of frauds. The matter was heard by the district judge on summary judgment who concluded no meeting of the minds occurred as to the material terms of the contract and consequently, there was no contract to specifically enforce. The court granted summary judgment to the Lindens and the Chapins appealed.

## II.

### STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court's standard of review is the same as the standard used by the district court originally ruling on the motion. *Intermountain Forest Management v. Louisiana Pacific Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file,

396

together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment. *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994).

When an action will be tried before the court without a jury, resolution of the possible conflict between the inferences is within the responsibilities of the trial court as fact finder. *Cameron v. Neal*, 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997). The trial judge is not constrained to draw inferences in favor of the party opposing a motion for summary judgment, but rather the judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts, despite the possibility of conflicting inferences. *Intermountain Forest Management*, 136 Idaho at 235, 31 P.3d at 923; *see also Loomis v. City of Hailey*, 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991). When questions of law are presented, this Court exercises free review and is not bound by findings of the district court but is free to draw its own conclusions from the evidence presented. *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 366, 109 P.3d 1104, 1108 (2005).

### III.

### DISCUSSION

The Chapins assert they reached an enforceable oral agreement to purchase the Property from the Lindens. Under Idaho's statute of frauds, an agreement for the sale of real property is invalid unless the agreement "or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent." I.C. § 9–505(4); *see also* I.C. § 9–503; *Hoffman v. SV Co., Inc.*, 102 Idaho 187, 190, 628 P.2d 218, 221 (1981). The statute further states, however, that the statute of frauds shall not be construed "to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof." I.C. § 9–504. The doctrine of part performance provides that when the parties to an agreement fail to reduce the agreement to writing, or otherwise fail to satisfy the statute of frauds, the agreement "may nevertheless be specifically enforced when the purchaser has partly performed the agreement." *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 722, 874 P.2d 528, 533 (1994).

The doctrine of part performance works in conjunction with the doctrine of equitable estoppel. "Under Idaho law, part performance per se does not remove a contract from the operation of the statute of frauds. Rather, the doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel." *Lettunich*, 141 Idaho at 367, 109 P.3d at 1109. (citing *Sword v. Sweet*, 140 Idaho 242, 249, 92 P.3d 492, 499 (2004)). Equitable estoppel generally, and the doctrine of part performance specifically, assume the existence of a complete agreement. *See Lettunich*, 141 Idaho at 367, 109 P.3d at 1109. Like any contract for the sale of land, an oral agreement "must be complete, definite, and certain in all its terms, or contain provisions which are capable in themselves of being reduced to certainty," before it will be specifically enforced by operation of the doctrine of part performance. *Lettunich*, 141 Idaho at 367, 109 P.3d at 1109 (citing *Bear Island Water Ass'n, Inc.*, 125 Idaho at 723, 874 P.2d at 534).

The threshold question for this Court, then, is whether there was a meeting of the minds between the Chapins and the Lindens on the essential terms of their agreement. For a land sale contract to be specifically enforced, the contract must typically contain the minimum provisions of the parties involved, the subject matter thereof, the price or consideration, a description of the property, and all the essential terms of the agreement. *Hoffman*, 102 Idaho at 190, 628 P.2d at 221. The Chapins point to their acceptance of a price of $125,000, a down payment of $30,000, and terms addressing interest, amortization, and time for final payment. The property and parties involved were clearly established, and because the Property was more than 40 acres, they argue, a mortgage was the only permissible

type of security and was thus also an established term. With the essential terms off the table, say the Chapins, any additional suggestions were necessarily "finer points" that had no bearing on the primary formation of the contract.

 While the Chapins undoubtedly agreed to the Lindens' proposed purchase price and terms, they also continued to negotiate on two other terms that were important to them, the partial deed-release provision and the pre-payment penalty provision. The Chapins argue that because they had agreed to those terms typically considered to be essential, the fact that they had no agreement about certain other terms which were material to them is of no consequence in determining whether there was a meeting of the minds. In *Lawrence v. Jones,* 124 Idaho 748, 864 P.2d 194 (1993), the Court of Appeals found that a contract for the sale of land was void for want of a security provision. *Id.* at 750, 864 P.2d at 196. "Although a real estate contract need not contain a security provision if none is contemplated, once parties attempt to provide for security it becomes an essential term of the contract." *Id.* at 751, 864 P.2d at 197.

By requesting that the Lindens consider releasing their security in the Property incrementally as the loan was paid, the Chapins put the security term of the contract at issue. Moreover, despite their attorney's protestations that the deed release and pre-payment terms were not important to the Chapins, the Chapins testimony indicates otherwise. At his deposition, when asked whether it was important to have the deed release provision in the contract, Frank Chapin testified, "Oh, yes. Yes." Sydney Chapin testified, "It didn't matter to me as far as keeping us from prepayment, as long as they would allow for a deed release." Frank Chapin's statement demonstrates the importance of the deed release provision, while Sydney Chapin's language goes further to cast the Chapins' acceptance as conditional, "as long as they [the Lindens] would allow for a deed release." Both statements underscore the materiality of the term to the contract as a whole. Proposed on the afternoon of the final day of negotiations, the term was never accepted by the Lindens. The absence of a meeting of the minds on this material term supports the district court's finding that no contract was formed.

Because we find that no meeting of the minds occurred, we need not reach the question of whether part performance would exempt the alleged oral agreement from the statute of frauds. Similarly, we do not address the Chapins' claim that the contract should be enforced under a theory of promissory estoppel. Promissory estoppel, as the district court correctly observed, is "a substitute for consideration, not a substitute for agreement between the parties." *Lettunich,* 141 Idaho at 367, 109 P.3d at 1109. It is not for lack of consideration that the Chapins' claim fails, but rather for lack of an agreement itself.

## IV.

## CONCLUSION

Because no agreement was reached by the end of the last day before the right of redemption expired, we affirm the district court's order granting summary judgment to the Lindens. We award costs on appeal to the Lindens.

Chief Justice SCHROEDER, and Justices EISMANN, BURDICK and JONES concur.

