# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35964

HENRY OGDEN, an unmarried man; and
MICHELLE HURST, an unmarried woman,

    Plaintiffs-Respondents,

v.

DENNIS C. GRIFFITH, an unmarried man;
and BONNIE M. PORTER, an unmarried
woman,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2010 Term

2010 Opinion No. 71

Filed: June 28, 2010

Stephen Kenyon, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Owyhee County. Hon. Thomas J. Ryan, District Judge.

The decision of the district court is affirmed.

Ellis, Brown & Sheils, Chtd., Boise, for appellants. Allen Boyd Ellis argued.

Dinius & Associates, PLLC, Nampa, for respondents. Kevin E. Dinius argued.

_____

HORTON, Justice

This case arises from a dispute concerning a real estate contract between Dennis Griffith and Bonnie Porter (Griffith and Porter) and Henry Ogden and Michelle Hurst (Ogden and Hurst). Griffith and Porter contracted to sell Ogden and Hurst two parcels of land totaling 40 acres. The sale was not consummated and Ogden and Hurst filed suit. After settlement negotiations, the parties' attorneys reached an agreement that Griffith and Porter would pay $40,000, secured by a deed of trust, to settle the claims against them. Griffith and Porter subsequently refused to pay the $40,000. Ogden and Hurst moved to enforce the settlement agreement and the district court ruled that the agreement was enforceable.

Griffith and Porter now appeal, arguing that the district court erred in finding that the settlement agreement was enforceable. They further appeal the district court's denial of their

1

summary judgment motion in the underlying lawsuit.  Ogden and Hurst request attorney fees and costs on appeal.  We affirm and award costs, but not attorney fees, to Ogden and Hurst.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 2006, Griffith and Porter entered into an agreement with Ogden and Hurst for the sale of two adjacent parcels of property totaling 40 acres.  The agreement had a closing date of November 30, 2006, and contained a "time is of the essence" clause.  Ogden and Hurst were unable to secure financing by November 30, 2006.   Addendum Number Three was then drafted to extend the closing date to December 8, 2006.  Griffith signed the addendum on December 1, 2006, and Porter signed on December 4, 2006.  Ogden and Hurst did not sign the addendum.  On December 6, 2006, Griffith and Porter notified the title company that the sale would not take place and retrieved the warranty deed.  Ogden and Hurst then filed suit, asserting breach of contract, breach of implied covenant of good faith and fair dealing, and seeking an injunction, specific performance, and declaratory judgment.

The parties filed cross-motions for summary judgment.  The district court denied both motions, finding that the question whether Griffith's and Porter's signing Addendum Number Three waived their right to claim that payment was due on November 30th was a matter of fact for the jury to decide.  Therefore, the district court found summary judgment was improper. Ogden and Hurst moved a second time for summary judgment.  This motion was also denied. Ogden and Hurst then brought a motion under I.R.C.P. 59(e) for reconsideration, submitting supplemental affidavits.  This motion was likewise denied, although the district court found that "Griffith either knew what his options were regarding the signing of the extension by virtue of the legal advice he and Porter had obtained, or he should have known."  The court further found that there were issues of material fact regarding whether Addendum Number Three had been signed under duress and that the trial would therefore proceed.

Around March 3, 2008, counsel for Griffith and Porter met with his clients to discuss how to proceed.  Two possible settlement alternatives were discussed.  The first was for the property sale to go forward.  The second was for payment of $35,000 to be paid to Ogden and Hurst within six months "and said payment would be funded by a loan collateralized by the property."  The district judge later made findings of fact that the essential terms of the settlement agreement for payment were communicated and agreed upon.

Specifically, that the Defendants would not be required to pay for a period of six months, and that there would need to be a release of the lis pendens in order to accomplish the goal of the Defendants obtaining a loan in the amount agreed upon. At least one witness, Mr. Hendricks, indicated that the issue of an interest amount was discussed. In addition, it appears that the issue of a deed of trust being executed by the Defendants was discussed.

On March 5, 2008, Griffith and Porter were contacted by their attorney again. The attorney stated that Ogden and Hurst would agree to a $40,000 payment, rather than the $35,000 payment discussed earlier. Griffith replied "that if [he] could borrow $35,000 that [he] could borrow $40,000." Porter states that she originally did not want to enter into the settlement but that she was told by her attorney that such a stance would create a conflict of interest between her and Griffith and that, should she want to pursue the matter, she would need to hire separate counsel. She then agreed to the settlement.

Based on these discussions, the attorneys for the parties arrived at an oral settlement, where Griffith and Porter "agreed to pay $40,000, within six months of the agreement, at an interest rate of six percent, the payment to be secured by a deed of trust." A witness to the negotiations stated that before the settlement was reached, counsel for Griffith and Porter

called [Griffith] first and he was agreeable to the terms of the settlement, saying "Okay that's good." [Counsel] then called [Porter] who asked if they still cannot clear the property to obtain a loan. [Counsel] replied that the litigation will not impede the procuring of a loan. [Porter] then replied that "whatever [Griffith] wanted to do, I am fine with it."

Later in the day on March 5, 2008, counsel for Griffith and Porter sent a letter which purported to "confirm our oral settlement agreement reached today." As the trial was scheduled to begin on March 6, 2008, Ogden and Hurst notified the court and the trial was vacated. On March 26, 2008, counsel for Griffith and Porter sent an email with an attached deed of trust and promissory note stating "[i]f the [sic] meet with your approval I will get my clients' signature thereon." Later in the day, counsel for Ogden and Hurst responded that "[t]hese will work." However, after being asked to sign the various documents, Griffith left a message for his attorney that reads:

3/27 – "not ready to sign." Seeking legal counsel elsewhere. "Don't take much stock in [counsel's] advice any more." "Give us a few days and we'll get in touch w/you. [sic]

On April 3, 2008, Ogden and Hurst moved to enforce the settlement agreement.

3

After Griffith's and Porter's attorney withdrew and new counsel appeared, Griffith and Porter argued that their prior attorney had not been granted express or implied actual authority to settle this matter. The court held an evidentiary hearing on June 26, 2008. On July 25, 2008, the district court granted the motion to enforce the settlement agreement, finding that Griffith and Porter had authorized their attorney to settle the matter. Represented by yet another attorney, Griffith and Porter then moved to vacate the judgment under I.R.C.P. 59(e), arguing that the agreement was subject to the statute of frauds and that their previous attorney did not have written authority to enter the agreement. The district court denied this motion, finding that the statute of frauds' requirement of written authority granted to an agent did not apply to an attorney engaged in settlement agreements. It further found that the settlement agreement was enforceable based on the alternative grounds of equitable estoppel and part performance. This finding was based on the fact that Ogden and Hurst had, "in reliance upon what they thought was an agreement to settle the lawsuit, instructed the court to vacate the trial that had been set for many months." The court also denied Ogden's and Hurst's request for attorney fees but awarded them costs.

Griffith and Porter have timely appealed both the district court's judgment enforcing the settlement agreement and the prior summary judgment ruling regarding the issue of waiver.

## II. STANDARD OF REVIEW

Enforcement of a settlement agreement where an evidentiary hearing has been conducted is upheld absent an abuse of discretion.[1] *Lettunich v. Lettunich*, 141 Idaho 425, 429, 111 P.3d 110, 114 (2005). This Court exercises free review over issues of law. *Fisk v. Royal Caribbean Cruises, Ltd.*, 141 Idaho 290, 292, 108 P.3d 990, 992 (2005). However, "[t]he trial court's findings of fact will not be set aside unless clearly erroneous. Thus, even if the evidence is conflicting, if the findings of fact are supported by substantial and competent evidence this Court will not disturb those findings on appeal." *Shore v. Peterson*, 146 Idaho 903, 907, 204 P.3d 1114, 1118 (2009).

---

[1] The district court cited *Goodman v. Lothrop*, 143 Idaho 622, 151 P.3d 818 (2007), for the proposition that a motion for enforcement of a settlement agreement is treated as a motion for summary judgment. This is true where, as in *Goodman*, no evidentiary hearing was conducted. *Id.* at 625, 151 P.3d at 821. However, an evidentiary hearing occurred in this case. That takes this case outside the ambit of *Goodman* and requires a deferential review of the trial court's findings of fact.

### III. ANALYSIS

**A. Although the statute of frauds applies to this settlement agreement, because Griffith and Porter are equitably estopped from asserting the statute of frauds, the settlement agreement is enforceable.**

Griffith and Porter make five arguments why the settlement agreement is not enforceable. They argue that a) the district court erred in finding that the statute of frauds was inapplicable; b) their attorney did not have the authority to settle this matter; c) part performance was inapplicable since Ogden and Hurst sought damages rather than specific performance; d) any performance of the agreement was unreasonable as it was undertaken prior to execution of the deed of trust; and e) the oral settlement was not enforceable as the written documents would be the consummation of the negotiation. Although we find that the statute of frauds applies, we affirm the district court's finding that Griffith and Porter are estopped from asserting the statute of frauds. We further find that the agreement was sufficiently definite to allow enforcement.

*1. The statute of frauds (I.C. § 9-503) applies to a settlement agreement involving a deed of trust.*

Idaho Code § 9-503, the statutory codification of the statute of frauds for real estate transactions, states:

> No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

Because a deed of trust is an interest in real property, it falls under the terms of I.C. § 9-503. *See* BLACK'S LAW DICTIONARY 445 (8th Ed. 2004) ("[D]eed of trust. A deed conveying title to real property to a trustee as security until the grantor repays a loan.").

This Court has previously stated that "[s]ettlement agreements are contracts that must comply with the statute of frauds in order to be enforceable." *Goodman v. Lothrop*, 143 Idaho 622, 627, 151 P.3d 818, 823 (2007); *see also McColm-Traska v. Baker*, 139 Idaho 948, 951, 88 P.3d 767, 770 (2004); *Lyle v. Koubourlis*, 115 Idaho 889, 891, 771 P.2d 907, 909 (1988). The Court has also stated that a settlement agreement "supersedes and extinguishes all pre-existing claims the parties intended to settle." *Goodman*, 143 Idaho at 625, 151 P.3d at 821. In the present case, because a settlement agreement is a new contract, the settlement agreement need not have been in writing except for the deed of trust. That is, the fact that the initial suit was based on a real estate transaction is not relevant; it is the fact that the settlement agreement itself

5

called for a deed of trust that brings the agreement within the scope of the statute of frauds. Given that this settlement agreement did include a deed of trust as part of its provisions, the settlement agreement at issue here was within the scope of I.C. § 9-503 and must be in writing.

Notably, it is not clear that the district court found any differently. The district court's decision was based on the doctrine of part performance as well as equitable estoppel. Part performance is only applicable as an exception to the statute of frauds. BLACK'S LAW DICTIONARY 1153 (8th Ed. 2004) ("*[P]art-performance doctrine.* The equitable principle by which a failure to comply with the statute of frauds is overcome by a party's execution, in reliance on an opposing party's oral promise, of an oral contract's requirements."); 73 Am. Jur. 2d Statute of Frauds § 313 ("The basis of the doctrine of part performance is that it would be a fraud upon the plaintiff if the defendant were permitted to escape performance of his or her part of the oral agreement after permitting the plaintiff to perform in reliance upon the agreement."). The district court's application of part performance would make no sense except in the context of an agreement otherwise within the purview of the statute of frauds.

Griffith and Porter make an additional argument that the agreement is unenforceable based on our statement in *Thompson v. Pike*, 122 Idaho 690, 696, 838 P.2d 293, 299 (1992), that "an oral agreement is not valid if the parties view the written draft as a consummation of the negotiation." They argue that because the agreement here "has all the criteria that indicate a written document was intended by the parties," it is an illegal and unenforceable contract. However, the question in *Thompson* was whether written notes or testimony about a purported agreement would constitute "the agreement" in question. *Id.* Given the discussion of the statute of frauds above, it is clear that a written agreement would ordinarily be required. Instead, the question here is whether some exception to the statute of frauds applies. In this case, the fact that a deed of trust was contemplated does not mean that the parties intended that the deed of trust would be the consummation of the parties' negotiations; rather, the execution of the deed of trust was simply one of the terms of the agreement.[2]

Further, I.C. § 9-503 states that a conveyance of an interest in real estate requires that an agent be "authorized by writing." There was no evidence presented that counsel for Griffith and Porter was authorized in writing to enter into the settlement agreement. The trial judge quoted at

---

[2] *Thompson* does indicate that the exchange of emails between the attorneys following the agreement could not be viewed as the written and signed (and therefore enforceable) agreement. None of the parties in this case make that argument.

6

length from a decision of the New Hampshire Supreme Court, which found that an attorney need not have written authority to enter into a binding settlement agreement requiring the sale of real property. *Halstead v. Murray*, 547 A.2d 202 (N.H. 1988). The district court found the reasoning compelling and found that Griffith and Porter need not have executed a writing authorizing their counsel to settle the case by means of a property conveyance.

However, the discussion in *Halstead* includes two statements that lead this Court to a different decision. First, the decision notes that the New Hampshire rule "regarding the power of an attorney to bind his client by settlement is, perhaps, the most liberal in the country." *Halstead*, 547 A.2d at 204 (quoting *Ducey v. Corey*, 355 A.2d 426, 427 (N.H. 1976)). This Court has not previously articulated whether it would apply a liberal or conservative standard in deciding the scope of an attorney's authority to bind his or her client. Although we acknowledge the important role played by lawyers in settlement negotiations, given the important policy considerations underlying the Legislature's adoption of the statute of frauds, we are unable to disregard the express language of the statute in order to exempt lawyers from its requirements. Second, in determining why the phrase "signed by the party to be charged, or by some person authorized by him in writing" contained in New Hampshire's statute of frauds was not applicable, the court simply stated that the statute "was not intended to cover an attorney under such circumstances" without explaining why it would not apply. N.H. Rev. Stat. Ann. 506:1; *Halstead*, 547 A.2d at 205. We are unable to discern such legislative intent from the plain language of I.C. § 9-503.

Accordingly, we conclude that I.C. § 9-503 applies to the agreement reached by counsel for the parties. *Idaho Conserv. League, Inc. v. Idaho State Dep't of Agric.*, 143 Idaho 366, 368, 146 P.3d 632, 634 (2006) ("Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction.") (citing *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999)). In the absence of a written settlement agreement and a written grant of authority to Griffith's and Porter's attorney, the agreement is not enforceable unless there is some other basis for concluding that the statute of frauds does not apply.

*2. Equitable Estoppel is applicable on the facts found by the district judge.*

The district court found that both equitable estoppel and part performance would allow enforcement of the settlement agreement. Because we find that equitable estoppel is an

7

appropriate ground for avoidance of the statute of frauds, we do not address the district court's decision regarding part performance.[3] The district court's finding that Griffith and Porter are equitably estopped from avoiding the agreement resolves both the issue of their attorney's authority and the oral form of the settlement agreement.

The elements of equitable estoppel are:

(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 126 Idaho 532, 534, 887 P.2d 1039, 1041 (1994). We have previously held that equitable estoppel is appropriate in a case where a purported agreement did not comply with the statute of frauds. *Boesiger v. Freer*, 85 Idaho 551, 556, 381 P.2d 802, 804 (1963).

In the present case, as in *Boesiger*, application of equitable estoppel is appropriate on the facts as found by the district court. First, Griffith's and Porter's willingness to send their attorney to enter into settlement negotiations and to agree subsequently to the general terms amounts to "conduct [that] undoubtedly was intended to and did convey the impression to [Ogden and Hurst] that [they] had an agreement." *Id.* at 560, 887 P.2d at 807. Second, it is uncontroverted that Ogden and Hurst were not aware that Griffith's and Porter's attorney lacked authority to enter into a binding agreement. Third, while Griffith and Porter argue that they did not give their attorney authority to settle the matter, the district court found otherwise, a finding that is supported by substantial and competent evidence. Griffith and Porter do not suggest that they did not intend for Ogden and Hurst to rely upon their attorney's representations. Finally, while Griffith and Porter argue that any reliance was unreasonable, the district court found otherwise. Given the testimony regarding the circumstances surrounding the agreement and the fact that reasonable people may properly rely on the representations of opposing counsel, that finding is supported by substantial and competent evidence. Griffith and Porter do not argue that no detriment ensued. For these reasons, we conclude that the district court properly determined

---

[3] Because we do not reach the question of part performance, we do not address Griffith's and Porter's argument that part performance was inapplicable because Ogden and Hurst sought damages rather than specific performance.

that Griffith and Porter are equitably estopped from asserting the statute of frauds to avoid the settlement agreement.

*3. The agreement was sufficiently definite to allow enforcement.*

We are unable to agree with Griffith's and Porter's assertion that the district court erred in finding that the settlement agreement was sufficiently definite as to be enforceable. The record shows that the parties agreed to the following terms: the deed of trust, the requisite property, the interest and the amount to be paid, the time frame for payment, the release of the lis pendens, and the first priority status of the deed of trust.

Griffith and Porter argue that two parcels were at issue and which property would be subject to the deed of trust was not specified. As the trial judge found that any loan would be "collateralized by the property," it appears that he found that both parcels were intended to be subject to the deed of trust. Given the circumstances giving rise to this litigation, we find this to be a reasonable inference drawn from the evidence.

Griffith and Porter further argue that the "right to prepay, right to inspection, protection of trust beneficiary's rights in the event of litigation, payment of all charges that may become liens, assignment (or not) of condemnation proceeds, and whether successor and assigns are bound" are all unknown terms of the deed of trust. This argument fails for two, interrelated reasons: first, because this Court gives deference to the findings made by the district court, Griffith and Porter must show that those terms are, as matters of law, essential parts of the agreement or that the findings are unsupported by the record. They have not done so. Second, the cases that Griffith and Porter cite, in particular, *Lettunich v. Key Bank*, 141 Idaho 362, 109 P.3d 1104 (2005), and *Watson v. Watson*, 144 Idaho 214, 159 P.3d 851 (2007), are materially different. *Lettunich* turned on questions including the amount of the loan and the interest rate which are essential terms of the agreement. 141 Idaho at 367, 109 P.3d at 1109. Here, those terms had been agreed to in the settlement. *Watson* centered on the property to be included in the sale. 144 Idaho at 218-19, 159 P.3d at 855-56. As discussed above, there is an implicit finding that both parcels were to be included in the deed of trust. The final case cited, *Chapin v. Linden*, 144 Idaho 393, 162 P.3d 772 (2007), is distinguishable because the parties "continued to negotiate on two other terms that were important to them," namely, "the partial deed-release provision and the pre-payment penalty provision." *Id.* at 397, 162 P.3d at 776. "By requesting that the Lindens consider releasing their security in the Property incrementally as the loan was

9

paid, the Chapins put the security term of the contract at issue." *Id.* That is, the Court found that those terms were essential terms to that particular agreement, not all agreements for real estate. There is no evidence that those terms were at issue in the negotiations here. For these reasons, we affirm the district court's conclusion that the settlement agreement was sufficiently definite as to be enforceable.

**B.     We will not address Griffith's and Porter's claim that the district court erred in its denial of summary judgment.**

Griffith and Porter further argue that the district court erred in granting summary judgment as to the issue of waiver. We decline to address this claim for two reasons. First, we have regularly held that the denial of a motion for summary judgment is not an appealable order. *See e.g. Chandler v. Hayden,* 147 Idaho 765, 773, 215 P.3d 485, 493 (2009). Second, our determination that the trial court did not err by enforcing the settlement agreement renders the issues presented in the underlying litigation moot. This Court has previously stated:

> The existence of a valid agreement of compromise and settlement is a complete defense to an action based upon the original claim. The agreement supersedes and extinguishes all pre-existing claims the parties intended to settle. In an action brought to enforce an agreement of compromise and settlement, made in good faith, the court will not inquire into the merits or validity of the original claim.

*Goodman v. Lothrop*, 143 Idaho 622, 625, 151 P.3d 818, 821 (2007) (citing *Wilson v. Bogert*, 81 Idaho 535, 542, 347 P.2d 341, 345 (1959)) (internal quotations omitted).

**C.     We award costs, but no attorney fees, to Ogden and Hurst.**

Ogden and Hurst have requested attorney fees under I.C. § 12-121 and I.R.C.P. 54(e)(1), which provide that attorney fees may be awarded where "the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). The question of the interplay between the statute of frauds and an attorney's authority is a matter of first impression before this Court. Although we have not accepted their argument regarding the sufficiency of the terms of the settlement agreement, we have reached our decision, in part, upon an implicit factual finding by the trial court. Accordingly, we do not find that the appeal was pursued frivolously and decline to award attorney fees. Ogden and Hurst are entitled to costs as the prevailing parties. I.A.R. 40.

## IV. CONCLUSION

We hold that, while a settlement agreement containing a deed of trust is a real estate transaction and therefore governed by the statute of frauds, the district court's finding of

10

equitable estoppel is supported by substantial, competent evidence.  We therefore affirm the district court's judgment enforcing the settlement agreement.  Costs to Ogden and Hurst.

Chief Justice EISMANN, Justices BURDICK, J. JONES and W. JONES **CONCUR**.