# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42434

PATRICIA MC KAY, )
    Plaintiff-Appellant, )
     )
v. )
     )
THOMAS G. WALKER, and COSHO )
HUMPHREY, LLP, a limited liability )
partnership, )
    Defendants-Respondents. )

Boise, December 2015 Term

2016 Opinion No. 31

Filed: March 23, 2016

Stephen Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

The judgment of the district court is affirmed.

Ellis Law, PLLC, Boise, for appellant. Allen B. Ellis argued.

Anderson, Julian & Hull LLC, Boise, for respondents. Yvonne Dunbar argued.

_____

HORTON, Justice.

Patricia McKay appeals the grant of summary judgment in favor of Thomas Walker and Cosho Humphrey, LLP, in a legal malpractice action. McKay contended that Walker negligently drafted a property settlement agreement by failing to include provisions that would have resulted in a judgment lien against payments owed to her husband which were secured by a mortgage. The district court concluded that because a mortgage is personal property and not real property, the failure to include a description of the real property subject to the mortgage and the mortgage's instrument number would not have resulted in the creation of a security interest. Based upon this legal conclusion, the district court held that Walker had not breached a duty to McKay and the alleged breach was not the proximate cause of any damages. McKay argues the district court erred in its conclusion. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Patricia McKay was divorced from her husband Darwin McKay (Darwin). McKay hired Thomas G. Walker and Cosho Humphrey, LLP (collectively Walker) to represent

her during the divorce proceedings. McKay and Darwin entered into mediation and on October 20, 2007, reached a settlement that was documented in a three-page handwritten agreement (the Agreement). At the time, Darwin had deals with Status Corporation (Status) involving two parcels of real estate: the Home Farm, which Status was scheduled to purchase in March of 2008; and the Albrethsen property, which had been deeded to Status in 2006 and was subject to a mortgage loan in favor of Darwin. The Agreement required Darwin to pay McKay $800,000 if the Home Farm transaction closed in March of 2008. If the transaction did not close as scheduled, Darwin's obligation was reduced to $500,000. The Agreement further provided that if the Status deal did not close by March 30, 2008, and Darwin had not paid McKay $500,000 by September 30, 2008, Darwin would once again be obligated to pay McKay $800,000.

The Agreement did not address security for Darwin's obligation to McKay. McKay was aware of this, as she sent Walker an email on October 21, 2007, expressing her concerns regarding the absence of collateral securing Darwin's obligation and the possibility that Darwin would manipulate the timing of the closing of the Home Farm transaction in order to reduce his obligation to her by $300,000. Walker attempted to obtain security guaranteeing Darwin's obligation but Darwin rebuffed those efforts.

In November of 2007, the Agreement was formalized in a "Property Settlement Agreement Incorporated and Merged with and into Judgment and Decree of Divorce" (PSA). As the title suggested would occur, the PSA was merged into Darwin and McKay's decree of divorce. The PSA did not contain the legal description of the Albrethsen property nor the instrument number of the mortgage on the Albrethsen property.

Status failed to pay the balance owed on the Albrethsen property. Litigation ensued, resulting in Darwin being awarded a $1.2 million judgment against Status. Status did not satisfy Darwin's judgment; rather, because a title insurance company had mistakenly insured the first-priority position of multiple Albrethsen property lienholders, including Darwin, the title insurance company paid Darwin the judgment amount in exchange for assignment of the judgment.

The Home Farm deal with Status did not close as scheduled. Darwin did not pay McKay the $500,000 prior to September 30, 2008. Thus, under the terms of the PSA, Darwin was required to pay McKay $800,000. Darwin did not make the required payment and McKay

initiated contempt proceedings on January 30, 2009. The contempt action resulted in a settlement in which McKay and Darwin agreed to new terms which supplanted the PSA.

McKay believed that the financial terms of her settlement with Darwin were less favorable than would have been the case if the PSA had been drafted in a fashion to secure payment of Darwin's obligations. On November 25, 2009, McKay initiated the present action against Walker, alleging that he negligently drafted the PSA by failing to include a legal description of the Albrethsen property and the instrument number of the Albrethsen mortgage. McKay claims that if these provisions had been included in the PSA, McKay would have had a judgment lien against the Albrethsen proceeds by operation of Idaho Code section 11-1110 following recordation of the judgment incorporating the PSA.

Walker moved for summary judgment, contending that he did not breach a duty of care to McKay and the alleged failures in drafting the PSA were not the proximate cause of McKay's inability to receive the payment Darwin owed her. The district court initially denied Walker's motion for summary judgment. The district court found that statements Walker made in an October 23, 2007, email to McKay prior to the execution of the PSA misstated the applicable law regarding whether the Albrethsen mortgage would be subject to a judgment lien, and that such a misstatement might constitute a breach of the standard of care.

Walker moved for reconsideration, arguing that the district court had erroneously interpreted the October 23, 2007, email as relating to the Albrethsen mortgage when it had actually referred to the Home Farm. The district court denied Walker's motion for reconsideration after finding that the email was susceptible to multiple reasonable interpretations.

Walker filed a second motion for reconsideration, again advancing arguments regarding the email correspondence between Walker and McKay prior to the execution of the PSA. McKay's response directed the district court's attention back to her pleadings as to the allegedly negligent conduct by Walker. Her complaint did not advance a claim that Walker had provided negligent advice regarding the effect of the PSA. Instead, she claimed that Walker had negligently drafted the PSA. In its memorandum decision on Walker's second motion for reconsideration, the district court described McKay's position regarding Walker's motion for summary judgment:

> McKay's response to the second motion to reconsider endeavors to draw the Court's focus away from the e-mail exchange on which the Court's two prior decisions had focused. Indeed, despite that McKay was on the winning side of

those decisions, she repeatedly emphasized that the alleged malpractice is <u>not</u> embodied in the e-mail exchange; instead, it is the failure to draft the PSA in a way that, when recorded, would create a security interest in her ex-husband's mortgage on the Albrethsen Property. This is one representative passage: "Defendants mistakenly perceive that their alleged liability is based on an email sent 30 days before the PSA was executed. . . . However, the actual negligence is the failure to construct a PSA which will . . . give plaintiff a secured position." This is another: "[T]he malpractice is based on the failure to draft and record a PSA that would protect plaintiff's interest. The malpractice is *not* the representations set forth in the October 23, 200[7] e-mail from Mr. Walker." McKay's counsel continued with that theme during the hearing on the second motion to reconsider. He stated unequivocally during the hearing that nothing in the e-mail exchange constitutes malpractice.

(emphasis and alteration in original).

The district court granted Walker's motion for reconsideration and entered summary judgment in favor of Walker. The district court explained the only two elements of malpractice at issue were whether Walker breached his duty to draft the PSA to protect McKay's interests, and whether his failure to do so was the proximate cause of McKay's pecuniary injuries. The district court held that Walker could not have breached his duty by failing to include a legal description of the Albrethsen property and the instrument number of the mortgage in the PSA because a mortgage, as personal property, was not subject to a judgment lien under Idaho Code section 10-1110. McKay timely appealed.

## II. STANDARD OF REVIEW

"In an appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on a motion for summary judgment." *Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 205, 61 P.3d 557, 562 (2002). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Oats v. Nissan Motor Corp. in U.S.A.*, 126 Idaho 162, 164, 879 P.2d 1095, 1097 (1994). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

"This Court exercises free review over questions of law." *Rhoades v. State*, 149 Idaho 130, 132, 233 P.3d 61, 63 (2010). "On review, the interpretation of a statute is an issue of law

over which this Court exercises free review." *Insight LLC v. Gunter*, 154 Idaho 779, 783, 302 P.3d 1052, 1056 (2013).

## III. ANALYSIS

As previously discussed, the district court granted Walker's motion for summary judgment after McKay emphasized that she was not claiming that Walker provided inaccurate advice. The district court observed:

> The alleged breach of duty, again, has to do with the drafting of the PSA, not with the advice rendered in connection with reaching a divorce settlement. Thus, while McKay's briefing at times criticizes Walker and Cosho Humphrey for allegedly giving her a mistaken impression about the extent to which her ex-husband's payment obligations under the PSA were secured, any shortcoming in the advice she received in that regard is not the basis for her claim. And, even if it were the basis for her claim, McKay has not shown a causal relationship between any allegedly erroneous advice and her claimed damages.

As before the district court, McKay's appellate briefing includes references to allegedly inaccurate advice that Walker gave prior to the execution of the PSA. These references are not sufficient to present an issue on appeal.

McKay does not challenge the district court's characterization of her claim; rather, McKay argues the district court erred in its legal conclusion that a mortgage is personal property and not real property.

The district court reasoned that the definition of real property found in Idaho Code section 55-101 is simply not broad enough to include a mortgage. Thus, because "every kind of property that is not" real property is defined as personal property by Idaho Code section 55-102, the mortgage on the Albrethsen property was personal property. The district court reasoned that, because the mortgage on the Albrethsen property was not subject to operation of Idaho Code section 10-1110, the mortgage could not have been the subject of a judgment lien, regardless of the manner in which Walker drafted the PSA. Accordingly, the district court concluded that Walker did not breach a duty to McKay by failing to include the Albrethsen property's legal description and the mortgage instrument number in the PSA because McKay would not have obtained a security interest in the mortgage proceeds.

McKay does not challenge the district court's reasoning flowing from its initial premise that the Albrethsen mortgage was personal property, i.e., that if the mortgage was personal property then Walker's alleged shortcomings in drafting the PSA did not breach a duty to McKay nor was it the proximate cause of damages. Instead, McKay asserts that the district court

erred when it concluded that a mortgage is personal property not subject to Idaho Code section 10-1110. We disagree.

Idaho Code section 10-1110 provides:

> A transcript or abstract of any judgment or decree of any court of this state or any court of the United States the enforcement of which has not been stayed as provided by law . . . may be recorded with the recorder of any county of this state . . . and from the time of such recording, and not before, the judgment so recorded becomes a lien upon all *real property* of the judgment debtor in the county, not exempt from execution, owned by him at the time or acquired afterwards at any time prior to the expiration of the lien . . . .

I.C. § 10-1110 (emphasis added).

Two Idaho statutes define real property. Idaho Code section 73-114(2) provides definitions applicable to "the compiled laws" unless another meaning is "otherwise apparent from the context" of a specific statute. Idaho Code section 73-114(2)(e) states: " 'Real property' is coextensive with lands, tenements and hereditaments, possessory rights and claims." I.C. § 73-114(2)(e) (emphasis added). The only term in the statute that might conceivably apply to mortgages is "possessory rights." Black's Law Dictionary defines "possessory interest" as "[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner." Black's Law Dictionary 1284 (9th ed. 2009). The Restatement (First) of Property states that a possessory interest in land exists where a person has: "(a) a physical relation to the land of a kind which gives a certain degree of physical control over the land, and an intent so to exercise such control as to exclude other members of society in general from any present occupation of the land . . . ." Restatement (First) of Property § 7 (1936). The focus on present rights of possession found in these definitions, as distinguished from the future, contingent right to sell property that a mortgage creates, leads us to conclude that a mortgage is not real property as defined by Idaho Code section 73-114(2)(e).

Idaho Code section 55-101 is the other statute providing a definition of "real property." The definition found in that statute includes: (1) "Lands, possessory rights to land, ditch and water rights, and mining claims, both lode and placer;" (2) "That which is affixed to land"; and, (3) "That which is appurtenant to land." I.C. § 55-101. A mortgage is not land. A mortgage does not create a possessory right to land. A mortgage is not a ditch or water right nor is it a mining claim. A mortgage is not affixed to land nor is it appurtenant[1] to land. In short, a mortgage

---

[1] Black's Law Dictionary explains the meaning of appurtenant as follows:

simply is not real property as defined by Idaho Code section 55-101. Because a mortgage is not real property, it is personal property. I.C. § 55-102.

McKay claims that *Ogden v. Griffith*, 149 Idaho 489, 236 P.3d 1249 (2010), supports her contention. There, we stated that a deed of trust was an interest in real property. McKay contends that because a mortgage is analogous to a deed of trust a mortgage is also an interest in real property. McKay's reliance in *Ogden* is misplaced. McKay's implicit premise is that all interests in real property are necessarily real property. That is not the case. "A mortgage creates only a security interest in real estate *and confers no right to possession of that real estate on the mortgagee.*" Restatement (Third) of Property (Mortgages) § 4.1(a) (1997) (emphasis added). Even a deed of trust is not considered a possessory interest in land under Idaho case law. In *Long v. Williams*, 105 Idaho 585, 587–88, 671 P.2d 1048, 1050–51 (1983), this Court explained that with the adoption of the Trust Deeds Act in 1957, Idaho "transitioned from a 'lien theory' state to a 'title passes' state where a deed of trust is employed as a security." *Id.* We further explained that a trustee is not granted the right to possess the property and "even though title passes for the purpose of the trust, a deed of trust is for practical purposes only a mortgage with power of sale." *Id.*

McKay contends that many Idaho statutes treat a mortgage as a real property interest, including: Idaho Code sections 45-902, 45-908, 55-811, and 55-813; however, a simple reading of those statutes indicates that mortgages are treated "in like manner" or "with the formalities required of" real property. The statutes themselves make it clear there is a distinction.

Finally, McKay contends that: "During the twentieth and twenty-first centuries, the term 'real property' has evolved beyond only tangible property and the common law rarely addresses the arcane mining terms set forth in that section." This Court is not free to ignore the definitions of real property provided by the Idaho Legislature in Idaho Code sections 73-114 and 55-101 because we view them as anachronistic nor are we free to amend them by judicial fiat under the guise of statutory construction. To the contrary, we are bound to apply their plain meaning. For

---

A thing is "appurtenant" to something else when it stands in relation of an incident to a principal and is necessarily connected with the use and enjoyment of the latter. A thing is deemed to be incidental or *appurtenant* to land when it is by right used with the land for its benefit, as in the case of a way, or water-course, or of a passage for light, air, or heat from or across the land of another.

Black's Law Dictionary 94 (5th ed. 1979) (emphasis in original).

that reason, we hold that a mortgage is not real property subject to a judgment lien under Idaho Code section 10-1110 and affirm the district court's grant of summary judgment.

## IV. CONCLUSION

We affirm the judgment of the district court and award costs on appeal to Walker.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.