# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket. No. 49190

**616 INC., an Idaho corporation,**

    **Plaintiff-Counterdefendant-**
    **Appellant-Cross Respondent,**

**v.**

**MAE PROPERTIES, LLC, an Idaho limited liability corporation; PULLOVER PRINTS CORPORATION, an Idaho corporation; and JAMES C. ELLIS, an individual,**

    **Defendants-Counterclaimants-**
    **Third Party Plaintiffs-Respondents-**
    **Cross Appellants,**

**and**

**RAYMOND SMITH, an individual, SHANNON SMITH, an individual, and DOES 1-100.**

    **Third Party Defendants.**

**Boise, November 2022 Term**

**Opinion Filed: February 8, 2023**

**Melanie Gagnepain, Clerk**

_____

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jonathan Medema, District Judge.

The decisions and judgment of the district court are <u>affirmed</u>.

McConnell Wagner Sykes & Stacey, PLLC, Boise, for Appellant/Cross-Respondent. Chad Nicholson argued.

Perkins Coie, LLP, Boise, for Respondents/Cross-Appellants. David Krueck argued.

_____

BRODY, Justice.

This appeal addresses whether a contract for the sale of business assets also contained language conveying an enforceable leasehold interest in real property in favor of the buyer. At summary judgment, the district court determined that the Ellis Family Trust owned the real

1

property underlying this leasehold dispute, and that the contract selling the assets of Pullover Prints Corporation ("PPC") to 616 Inc. ("616") did not convey a leasehold interest to 616 because material terms necessary to form a valid and enforceable lease were missing. Instead, the district court concluded that the contract involving the sale of assets only contained an "agreement to agree" on the terms of a written lease at a later date. Accordingly, the district court entered judgment in favor of the Ellis Family Trust.

616 appeals and argues that all material terms necessary to form a valid and enforceable lease can be found within the asset contract. Thus, 616 claims the district court erred when it granted summary judgment in favor of the Ellis Family Trust. In addition, Respondents PPC, Mae Properties, LLC ("Mae"), and Ellis in his individual capacity and in his capacity as trustee for the Ellis Family Trust, cross-appeal the district court's decision regarding their collective motion for attorney fees. For the reasons discussed below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Roughly three years before this lawsuit arose, James Ellis and Cherie Ellis formed the Ellis Family Trust. The property placed into the trust includes the real property underlying this leasehold dispute, i.e., a commercial parcel located at "9990 West State Street in the city of Boise, Idaho[.]" The district court found, and no party disputes, that the Ellis Family Trust, with James Ellis as its trustee, owns the underlying real property for purposes of this leasehold dispute.

In November 2018, roughly one year after the Ellis Family Trust was created, PPC—a business operated by James Ellis on the commercial parcel at issue—sold its business assets and personal property to another company—616. To memorialize the terms of the sale, the parties executed an Agreement to Purchase Business Assets ("the APA"), and within it, incorporated a separate list which would enumerate the personal property sold to 616 ("the Asset List"). Although the exact date was disputed at oral argument, the Asset List was finalized no later than March 2019, roughly three months after the sale of assets was consummated.

The APA recites that it is an agreement between just two entities: PPC and 616. However, paragraph six of the APA contains promises by: PPC, 616, *and* "Ellis [(individually)] or MAE Properties [(Mae)][.]" *See* Section III.A, *infra* (quoting paragraph six in full). Paragraph six is the "lease" provision at the center of this dispute wherein 616 maintains that the APA, when read along with the incorporated Asset List, conveys to 616 a five-year leasehold interest in the

2

commercial parcel with a "monthly" rent of $3,000 and an option to extend the lease term. The APA is signed by Raymond Smith and Ellis; however, it is unclear whether "either person was signing for themselves or in their capacity as an officer or employee of any of the corporations." Nevertheless, the district court found, and the parties do not dispute, that there were three signatories to the APA: Smith in his capacity as an officer of 616, Ellis in his capacity as an officer of PPC, and Ellis in his individual capacity. The same day the APA was executed, the parties also signed a supplemental escrow instruction that "the creation and execution of the property lease and or rent, security deposit or payments associated thereto, will not be addressed through the escrow closing" for the APA.

At the time the APA was executed, nothing in the record indicates that PPC had "any interests in the [underlying] real property (i.e., land or building), such as a leasehold." Also, "[t]here are at least two, but possibly more, buildings on the land that is the subject of this dispute." There is a building in which PPC was apparently conducting its business and storing its personal property relevant to the APA. There were (are) also "additional tenants in the same building and perhaps an attached but other-wise separate building (i.e., a second building sharing a common wall with the first), and there was another entity, not named in this suit, using another smaller building in a different area of the lot."

After the APA was executed, 616 took actual possession of a unit that PPC was apparently operating on the underlying property: Suite 100. Since that time, 616 has sent a $3,000 rental payment to Mae each month. In the roughly 18 months between the execution of the APA and the filing of 616's complaint, the record reflects that the parties continued to negotiate the terms of a lease for the underlying commercial parcel for 616.

**B. Procedural Background**

In June 2020, apparently under the belief that Mae owned the underlying commercial parcel, 616 filed a complaint against PPC, Mae, and Ellis (individually) seeking a declaration that the APA contained a valid and enforceable lease for a portion of the underlying commercial parcel. 616 also sought declaratory relief concerning the terms of building maintenance, electricity, and access under the APA if it was declared a valid and enforceable lease. Roughly one month later, PPC, Mae, and Ellis (individually) answered the complaint. PPC, Mae, and Ellis (individually)—apparently also under the belief that Mae owed the underlying commercial parcel—denied that the APA contained a valid and enforceable lease, and instead asserted that the APA was an agreement

3

to agree on the terms of a future lease that was never successfully negotiated. According to PPC, Mae, and Ellis (individually), 616 had a month-to-month tenancy which was terminable at will.

Alleging 616 refused to enter into a commercial lease agreement after the APA was executed, PPC, Mae, and Ellis (individually) also counterclaimed against 616 for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud in the inducement, tortious interference with contract, interference with a prospective economic advantage, and violation of the Idaho Consumer Protection Act (I.C. §§ 48-601 to -619). PPC, Mae, and Ellis (individually) also filed a third-party complaint against Raymond Smith and Shannon Smith alleging the same causes of action and adding a claim for violation of the Revised Uniform Law on Notarial Acts (I.C. §§ 51-101 to -133). Under the Notarial Acts claim, PPC, Mae, and Ellis (individually) alleged that Shannon Smith's notarial act on the APA—later used to record the APA—should be declared void because she was the spouse of a party to the APA with a direct beneficial interest in it (i.e., Raymond Smith, President of 616). Ellis (individually) did not dispute that it was his signature on the APA. In their prayer for relief, PPC, Mae, and Ellis (individually) asked for, among other things, $1,650,000 in damages due to the alleged actions of 616 and the Smiths that caused the loss of a sale of the underlying commercial parcel to another entity.

Two months later, PPC, Mae, and Ellis (individually) amended their pleadings (their answer, counterclaim, and third-party complaint) to clarify the interests at stake and to add Ellis in his capacity as trustee of the Ellis Family Trust. The amended pleading clarified that Mae is the property manager for Suite 100 on the underlying commercial parcel; Ellis, in his individual capacity, is an owner of Mae; Ellis is an officer of PPC; and Ellis is a trustee of the Ellis Family Trust. More importantly, the amended pleading clarified that the Ellis Family Trust owned the underlying commercial parcel—not Mae, PPC, or Ellis (individually).

One month later, in October 2020, after a motion by 616 and the Smiths, the district court dismissed the following claims brought by Mae: breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contract, and the Idaho Consumer Protection Act claim. The district court granted the motion largely because, after taking the pleadings as true, there were no facts alleged that would entitle Mae to relief since Mae did not allege it was a party to the APA, or that it had any other agreement with 616 or the Smiths. After the motion was granted, PPC, Mae, and Ellis (individually and as trustee) obtained new counsel, and by way of a stipulation and order granting leave, amended their pleadings a second time.

4

The original answer filed by PPC, Mae, and Ellis (individually) did not change. However, PPC, Mae, and Ellis (trustee) amended their counterclaims and third-party complaint to plead only a competing claim for a declaratory judgment seeking a ruling that the APA conveyed no interest in the underlying commercial parcel to 616, a claim to quiet title to the underlying commercial parcel in the Ellis Family Trust, and a Notarial Acts claim which had been pleaded previously. Rather than designate only Ellis (as trustee) as the counterclaimant in the declaratory judgment and quiet title claims, PPC and Mae added themselves as parties to those claims (while Ellis in his individual capacity remained a party to the leasehold dispute by virtue of 616's original complaint). In addition, PPC, Mae, and Ellis (individually and as trustee—although it is unclear by the pleadings) all appear to have jointly pleaded the Notarial Acts claim. Based on the record on appeal, no party afterwards amended their pleadings or moved to dismiss any other party from any of the competing claims for declaratory relief, the quiet title counterclaim, or the third-party complaint against Shannon Smith for her allegedly improper notarial act.

Five months later, in May 2021, PPC, Mae, and Ellis (individually and as trustee) moved for summary judgment on their claims. In response, 616, without filing a separate motion, contended it was entitled to summary judgment and declaratory relief that the APA conveyed a leasehold interest to it. At the summary judgment hearing, all parties agreed that as to the leasehold dispute, the writings the district court was being asked to interpret (the APA and incorporated Asset List) were unambiguous and that there were no disputed issues of material fact. Two months after the hearing, the district court issued its written decision.

The district court determined that the APA and incorporated Asset List did not contain language forming a valid and enforceable lease agreement. Instead, the writings contained only an agreement to sell PPC's business assets to 616 and for Ellis (individually) to work for 616 as a consultant. Based on these conclusions, the district court quieted title to the underlying commercial parcel in favor of the Ellis Family Trust and declared that 616 had no rights or responsibilities under the writings as to the underlying property. Instead, the district court declared that 616 has, at most, a tenancy at will in Suite 100 of the underlying commercial parcel. In other words, as to the leasehold dispute, the district court granted summary judgment in favor of Ellis (as trustee) on behalf of the Ellis Family Trust (not PPC, Mae, or Ellis in his individual capacity). The district court also granted summary judgment in favor of PPC and Ellis (individually) on the Notarial Acts claim (reasoning that Mae, and Ellis in his capacity as trustee were not signatories to the APA)

5

and declared the notarial act by Shannon Smith on the APA void. As the writings did not form a valid and enforceable lease, the district court did not reach 616's ancillary claim for declaratory relief over the purported terms of maintenance, electricity, and access.

Ten days after the district court entered final judgment, PPC, Mae, and Ellis (individually and as trustee) (collectively "Defendants/Counterclaimants"), moved for attorney fees and costs as the prevailing parties under Idaho Rule of Civil Procedure 54, Idaho Code sections 10-1210, 12-120(3), and 12-121, and the APA. Defendants'/Counterclaimants' motion did not apportion the attorney fees between the parties or the claims asserted and defended. Instead, Defendants/Counterclaimants submitted a lump sum request in the amount of $68,346.47. In support of their motion, Defendants/Counterclaimants attached invoices for the attorney fees addressed to Mae—but not any of the other Defendants/Counterclaimants. Within these invoices were charges related to all Defendants/Counterclaimants pertaining to, among other things, discovery, depositions, demand letters, consultations, motions in the leasehold dispute, the ongoing landlord-tenant problems between 616 and Mae, and the Notarial Acts claim.

Four days after the filing of Defendants'/Counterclaimants' motion for fees and costs, 616 moved for reconsideration of the district court's grant of summary judgment. Twenty-one days after that, the district court denied 616's motion for reconsideration and issued a separate written decision on Defendants'/Counterclaimants' motion for fees and costs. In its decision, the district court determined that the only prevailing party in the dispute over the leasehold interest of 616 was the Ellis Family Trust (and Ellis as trustee). As to the Notarial Acts claim, the district court concluded that only PPC and Ellis (individually) were prevailing parties. From this, the district court granted in part and denied in part Defendants'/Counterclaimants' motion for costs; denied their motion for attorney fees under Idaho Code sections 12-120(3), 12-121, and 10-1210; denied their motion for fees in the leasehold dispute under the APA; and awarded "$0" to PPC and Ellis (individually) under the APA as the "reasonable amount of fees to which they are entitled" for prevailing on the Notarial Acts claim.

616 timely appealed the grant of summary judgment regarding the leasehold dispute (and on a right of first refusal issue that 616 has since withdrawn). Defendants/Counterclaimants timely cross-appealed the district court's decision on their joint motion for attorney fees under the APA and Idaho Code section 12-120(3).

## II.     STANDARD OF REVIEW

"In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Holdaway v. Broulim's Supermarket*, 158 Idaho 606, 609, 349 P.3d 1197, 1200 (2015) (internal quotations and citation omitted). Under Idaho Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bedard & Musser v. City of Boise City*, 162 Idaho 688, 689, 403 P.3d 632, 633 (2017). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Miller v. Idaho State Patrol*, 150 Idaho 856, 863, 252 P.3d 1274, 1281 (2011) (internal quotations and citation omitted).

We review a district court's decision on a motion for attorney fees for an abuse of discretion. *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019). Under the abuse of discretion standard, this Court conducts a four-part inquiry to determine whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.     ANALYSIS

### A. The APA and Asset List lack the material terms necessary to form a valid and enforceable commercial lease agreement for a term exceeding one year.

In its summary judgment decision, the district court concluded that the APA (and incorporated Asset List) are missing two of the material terms necessary to form a valid and enforceable lease agreement: a sufficient description of the real property to be leased and the "time and manner" for payment of rent. The district court acknowledged that even though the APA referenced a lease, that language constituted an unenforceable "agreement to agree." Accordingly, the district court determined that the APA did not convey a leasehold interest to 616 and granted declaratory relief in favor of, and quieted title in, the owner of the property underlying the leasehold dispute—the Ellis Family Trust.

On appeal, 616 argues that the APA (and incorporated Asset List) sets forth all material terms necessary to form and convey a valid and enforceable leasehold interest to 616 in Suite 100

7

of the underlying commercial parcel. 616 further argues that the doctrine of part performance—along with parol evidence of what unit 616 possessed and improved, and the practice of 616 paying Mae rent at the beginning of each month—cures any deficiencies in the APA as to the material terms necessary to form a lease agreement. In response, Defendants/Counterclaimants maintain that the district court correctly concluded the APA omits material terms necessary to form a valid lease agreement, and that the doctrine of part performance does not apply to supply the missing terms. For the reasons discussed below, we affirm.

There are two steps to determining whether a party has a valid and enforceable leasehold interest in real property for a term exceeding one year. First, the parties must *form* a lease contract with all material terms. *See Gaskill v. Jacobs*, 38 Idaho 795, __, 225 P. 499, 500 (1924). There are four necessary terms: (1) "a definite agreement as to the extent and bounds of the property leased"; (2) "a definite and agreed term [(length of time)]"; (3) "a definite and agreed price of rental," and (4) "the time and manner of payment." *Id.* (alteration added) (quoting Jones on Landlord and Tenant, at 170, § 173a); *see also Bennett v. Richards*, 80 Idaho 140, 144, 326 P.2d 986, 988 (1958). If any of these material terms are left for future negotiations, no lease contract comes into being, leaving a mere "agreement to agree." *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 155 Idaho 55, 63, 305 P.3d 499, 507 (2013).

Second, because the term of the alleged lease at issue exceeds one year, the Statute of Frauds requires that the contract be memorialized in writing and "subscribed by the party sought to be charged[,]" or it is "invalid" and unenforceable, i.e., the contract does not convey the leasehold interest. I.C. §§ 9-503, 9-505(4). To satisfy the Statute of Frauds, the "essential elements of the agreement cannot rest in parol [evidence.]" *Bennett*, 80 Idaho at 145, 326 P.2d at 988 (quoting *Raff v. Baird*, 76 Idaho 422, 427, 283 P.2d 927, 930 (1955)).

However, if a contract to lease real property for a term exceeding one year was formed notwithstanding compliance with the Statute of Frauds (e.g., there is an oral contract that contains all material terms), courts retain their equitable power to "compel the specific performance of [that] agreement, in case of part performance thereof." I.C. § 9-504. In other words, where there is sufficient evidence of a lease contract for a term exceeding one year that is "definite and certain in all of its material terms[,]" it may be specifically enforced—even if it is not memorialized in writing—based on the doctrine of part performance. *See Dante v. Golas*, 121 Idaho 149, 152, 823 P.2d 183, 186 (Ct. App. 1992).

8

Here, 616 argues that the APA (and the incorporated Asset List) evidences the complete agreement necessary to both form a valid lease contract, and sufficiently memorialize that contract in writing. In other words, 616 relies solely on written language to evidence both contract formation and compliance with the Statute of Frauds. Thus, the two-step inquiry merges into one in this dispute, with the central question being whether the written language contains the material terms necessary to form a lease contract.

As to material terms, the only dispute is whether the language in the APA (and incorporated Asset List) contain (1) "a definite agreement as to the extent and bounds of the property leased"; and (2) "the time and manner of payment" for the agreed rental price. The language relevant to the leasehold dispute is found in the following provisions of the APA:

> THIS AGREEMENT TO PURCHASE BUSINESS ASSETS ("**Agreement**") is made Effective as of the last date set forth on the signature page below ("**Effective Date**") by and between PULLOVER PRINTS CORPORATION, an Idaho General Business Corporation ("**Seller**") and 616 INC. (RAYMOND SMITH, PRESIDENT) or his assigns, ("**Buyer**"). Seller agrees to sell, and Buyer agrees to buy, all of the business assets of Pullover Prints Corporation ("**Business**") located at 9990 W. State Street[,] Boise, Idaho 83714 ("**Business Premises**"), subject to the terms and conditions of this Agreement. Buyer and Seller may be referred to in this Agreement individually as a "**Party**" or collectively as the "**Parties**".

> [. . . .]

> **2. ASSETS INCLUDED:** All Assets of the Business located on the Business Premises or otherwise utilized in the operation of the Business ("**Assets**") shall be included in the purchase contemplated by this Agreement, except cash of the Business and minor personal items. Assets include, but are not limited to, all shop equipment, manufacturing jigs, raw materials, finished goods, computers, office equipment, fixtures, email accounts, email addresses, website and domain name-www.pulloverprints.com, the name of the Business-Pullover Prints, all phone and fax numbers associated with the Business and/or the Business Premises, maintenance equipment, customer lists, files, vendor information, necessary licensing of hardware and software, or other required business operation licensing. *A complete list of Assets shall be provided by Seller within 10 days of the Effective Date ("Asset List"), which shall be attached and incorporated into this Agreement as Exhibit B upon receipt by Buyer from Seller.* (i) One-Hundred Fifty Thousand Dollars ($150,000.00) of the Purchase Price shall be allocated to the portion of the Assets· included in Exhibit B. (ii) One-Hundred Fifty Thousand Dollars ($150,000.00) of the Purchase Price shall be allocated to the portion of Goodwill value.

> [. . . .]

9

**5. CONTINGENCIES:** This agreement is subject to the contingencies noted below. All contingencies shall be deemed removed, unless written notice of inability to remove contingencies is received within thirty days (15 days) [sic] of acceptance, or Closing, whichever comes first. [sic]:

[. . . .]

(d)   Buyer will have thirty (30) days from the date of acceptance of this agreement to obtain financing, review Seller's documents, evaluate the Business, establish a written Consulting Agreement with Seller, ***and establish a written Property Lease.***

In the event that any of the forgoing contingencies are not satisfied, in Buyer's sole discretion and for any reason, by the Closing Date, Buyer may elect to terminate this Agreement and will be of no further force or effect.

[. . . .]

**6. LEASE OF BUSINESS PREMISES:** Seller represents and warrants that *Seller and/or Seller's sole member, Jim Ellis, owns and/or has the authority to lease the Business Premises to Buyer. Seller and/or Jim Ellis or MAE Properties hereby agrees to lease the Business Premises to Buyer for a term of five (5) years, commencing on the Closing Date, with a monthly rental payment of Three-thousand [sic] Dollars ($3,000.00) per month, terminable at Buyer's will with a 60 day written notice ("Lease Agreement").* First month rent shall be at no charge. *Such Lease Agreement shall also give Buyer* the option to extend the term of the Lease Agreement for an additional period of monthly, three (3) or five (5) years. Rent for each such additional month after the initial five (5) year term shall be Three-Thousand Five-Hundred Dollars ($3,500.00) per month. Landlord shall pay all real property taxes, building maintenance, natural gas, water, sewer, garbage. Landlord shall grant Buyer first right of refusal should Seller decide to sell property. Buyer (Tenant) shall pay for insurance on equipment, general business liability, umbrella policy and utilities not included above.

[. . . .]

**17. SURVIVABILITY OF CONTRACT:** This contract shall survive the Closing as to the terms and conditions so specified herein.

(Bold in original and italics added.)

The other relevant language relied upon by 616 is found in the Asset List which was expressly incorporated by reference into the APA. The Asset List was organized into eight different work areas (e.g., "Front Showroom," "Vinyl Area," "Embroidery Area") with a list of property found in each area. There were also several groups of supplies (e.g., "Embroidery Area – Supplies" and "Screen Print Area – Supplies") and some miscellaneous property (e.g., "Digital Printing Equipment" and "Inventory"), *see, infra*. For the reasons discussed below, even when the

APA and Asset List are taken together, the language between the two writings does not contain all material terms necessary to form a lease contract.

1. <u>The APA and Asset List do not contain a definite and certain agreement as to the general "extent and bounds" of the real property to be leased.</u>

When it comes to the sale of real property, the Statute of Frauds applies, *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 283, 92 P.3d 526, 533 (2004), and the "written instrument purporting to convey real property must contain a sufficient description of the property." *City of Kellogg*, 135 Idaho at 244, 16 P.3d at 920. "A description contained in a deed will be sufficient so long as quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers." *Lexington Heights Dev., LLC*, 140 Idaho at 281–82, 92 P.3d at 531–32 (quoting *City of Kellogg*, 135 Idaho at 244, 16 P.3d at 920). The writing memorializing the agreement must "contain a description of the property, either in terms or by reference, so that the property can be identified without resort to parol evidence." *Ray v. Frasure*, 146 Idaho 625, 628, 200 P.3d 1174, 1177 (2009).

Importantly, "reasonable certainty" is not enough. *Id.* at 629–30, 200 P.3d at 1178–79. Instead, the writing must contain a property description that designates "exactly" what property is being conveyed. *Id.*; *see, e.g.*, *Lexington Heights Dev., LLC*, 140 Idaho at 281–82, 92 P.3d at 531–32 (holding that a writing inadequately described the exact property to be sold when it did not identify the boundaries of the five acre parcel that was to be reserved from the sale of a ninety-five acre parcel). Along these lines, we have said that a physical address alone is insufficient to describe the exact property to be sold because "[t]he physical address gives no indication of the quantity, identity, or boundaries of the real property." *Ray*, 146 Idaho at 630, 200 P.3d at 1179.

In contrast, what counts as a sufficient description of real property to be leased is less onerous than what is required for a sale. To lease real property, the parties must "expressly or impliedly agree" on the "general[,]" *Wing v. Munns,* 123 Idaho 493, 499, 849 P.2d 954, 960 (Ct. App. 1992), "extent and bounds of the property to be leased[,]" *Gaskill*, 38 Idaho at __, 225 P. at 500. *See, e.g.*, *Wing*, 123 Idaho at 499, 849 P.2d at 960 (holding that there was insufficient evidence that the parties ever agreed on the general "extent and bounds" of the property to be leased where there was no discussion over whether the lease included three or four acres, the mobile home, a well, and an additional acre for machinery on a 320 acre farm), *aff'd* 123 Idaho 463, 463, 849 P.2d 924, 924 (1993) (reaching the same conclusion); *Gaskill*, 38 Idaho at __, 225 P. at 500 (holding

11

that a writing's reference to an unidentified "storeroom" then "occup[ied]" was too "indefinite and uncertain" to sufficiently describe the general "extent and bounds of the property to be leased").

The district court correctly concluded that the physical address referenced in paragraph six of the APA ("Business Premises"), does not provide a sufficient description of the general "extent and bounds" of the property to be leased. Although the property description required for a lease of real property is less demanding than that required for a sale, a physical address alone "gives no indication of the quantity, identity, or boundaries of the real property" to be leased. *See Ray*, 146 Idaho at 630, 200 P.3d at 1179. Thus, we move to 616's central argument: Whether the incorporated Asset List—along with the physical address—provides a sufficient description of the general "extent and bounds" of the property to be leased. We conclude that it does not.

The Asset List described the personal property PPC conveyed to 616, and relevant to 616's argument here, the Asset List used the following headings to indicate where those items were apparently located at the underlying property (i.e., what rooms or areas PPC allegedly occupied at the physical address): "Front Showroom"; "Vinyl Area"; "Embroidery Area"; "Artwork Room – Jaymee's Office"; "General Office Area"; "Office Area Storage/Break Room"; "Screen Print Area"; and "Screen Development Room." In pointing to these rooms, 616 argues that the Asset List supplies a sufficient description of the property to be leased because "there is no other unit" at the physical address provided in the APA "that contains these areas." However, 616's argument fails for two reasons.

First, 616 improperly relies on extrinsic evidence that is not referenced in, or on the face of, the APA or the incorporated Asset List. Whether "no other unit" at the physical address has the rooms named in the Asset List—and whether those rooms were in fact those occupied by PPC to then be occupied by 616 after the consummation of the APA—is not answered by the APA or Asset List. Instead, those questions are answered by a declaration from Raymond Smith (President of 616). This is extrinsic evidence that 616 cannot use to supply the "extent and bounds" of the property to be leased when 616 does not contend that any language in the APA or incorporated Asset List is ambiguous. *See Bennett*, 80 Idaho at 145, 326 P.2d at 988 (explaining that to satisfy the Statute of Frauds, the "essential elements of the agreement cannot rest in parol [evidence.]"). Thus, the contents of Smith's declaration cannot be considered.

Second, with that extrinsic evidence set aside, the language in the APA and Asset List does not contain a sufficient description of the general "extent and bounds" of the property to be leased.

12

This is because the APA and Asset List do not identify, locate, or explain *what* property, and to what extent (or with what boundaries) is to be leased to 616. And even when the physical address is considered alongside the rooms' headings mentioned in the Asset List, nothing in the writings identifies the mentioned rooms as being within any particular location, building(s), or otherwise at the physical address. Instead, the mentioning of rooms in the Asset List—without more—is just as "indefinite and uncertain" as naming an unidentified "storeroom" in *Gaskill*, 38 Idaho at __, 225 P. at 500.

More importantly, nothing in the writings reflects that *those* rooms form the general extent and bounds of the property to be leased. Instead, when the physical address and the mentioned rooms are taken together, these writings could be leasing the entire parcel, a particular portion(s) of the parcel, a particular building(s) on the parcel, or a particular room(s) within one or more buildings on the parcel at the underlying physical address. There is no way to determine which combination is the purported "agreement" from face of the APA and Asset List. Without this, the writings fail to reflect a definite and certain agreement on the general "extent and bounds" of *what* will be leased no different than the lack of a definite agreement in *Wing*, 123 Idaho at 499, 849 P.2d at 960.

In sum, we agree with the district court that the APA and Asset List do not contain a sufficient description of the real property to be leased. Thus, a material element required to form a lease contract is missing and the Statute of Frauds is not satisfied.

2. The APA does not contain a definite and certain agreement as to the "time and manner of payment" for the agreed rental price.

616 also challenges the district court's conclusion that the APA is missing a second material term necessary to form a lease contract: a definite and certain agreement on the "time and manner of payment" for the agreed rental price. 616 asserts that the district court erred in two ways: (1) the word "monthly" in the APA is definite enough to set the "time and manner of payment" as the first of the month; and (2) the parties' practice (after the APA was executed) of treating rent as due on the first of each month cures any uncertainty over the agreed "time and manner of payment." For the reasons below, 616's points are unpersuasive.

In the APA, the word "monthly"—standing alone—does not reflect a definite and certain agreement on the "time and manner of payment" for the agreed rent. The APA provides that 616 is to pay a "monthly rental payment of Three-thousand Dollars ($3,000.00) per month[.]" This is more

13

definite than the writing at issue in *Gaskill* which included the overall term but omitted *any* reference to the "time and manner of payment" for the agreed rent. *See* 38 Idaho at __, 225 P. at 499–500 (providing "for a term of two years at a rental of $100 in advance"). Nevertheless, the APA does not state what day rent is due each month (time), how rent is to be paid or applied (manner), or to whom rent is due (manner). Without these details, the APA, on its face, does not include a definite and certain agreement on the "time and manner of payment" for the agreed rental price.

616 attempts to cure this facial defect by pointing to evidence in the record that the parties adopted the practice of treating the rent as due to Mae on the first of each month. However, this practice was adopted *after* the APA was executed and is nowhere referenced in the APA. As noted above, 616 cannot use extrinsic evidence to supply a missing material term from a writing 616 also contends is unambiguous. Instead, as the district court pointed out, the mutual practice of treating rent as due to Mae on the first of the month—after 616 took physical possession and made improvements—is entirely consistent with a tenancy at will in the absence of a lease contract. Thus, as the district court concluded, a second material element required to *form* a lease contract is missing from the APA which also means it does not satisfy the requirements of the Statute of Frauds.

3. The doctrine of part performance does not apply to supply the missing material terms necessary to form a complete lease contract.

Finally, 616 argues that its "part performance" in possessing and improving Suite 100 at the underlying property cures any uncertainty or indefiniteness in the APA and Asset List such that a complete lease contract was formed and can be specifically enforced regardless of the Statute of Frauds. In other words, 616 argues that where the writings are missing a sufficient description of the "extent and bounds" of the property to be leased, and definite and certain agreement on the "time and manner of payment" for the agreed rent, 616's unilateral actions *after* the writings were executed cures any defects in the writings to both form a complete lease agreement *and* negate the Statute of Frauds. 616's argument misapplies the doctrine of part performance.

"The doctrine of part performance provides that when the parties to an agreement fail to reduce the agreement to writing, or otherwise fail to satisfy the [S]tatute of [F]rauds, the agreement 'may nevertheless be specifically enforced when the purchaser [or lessee] has partly performed the agreement.' " *Chapin v. Linden*, 144 Idaho 393, 396, 162 P.3d 773, 775 (2007) (alterations added) (quoting *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 722, 874 P.2d 528, 533 (1994)). In other words, the part performance doctrine is an exception to the Statute of Frauds and can allow

14

for specific enforcement of a formed contract (not reduced to writing) in equity. *See* I.C. § 9-504; *Dante*, 121 Idaho at 152, 823 P.2d at 186.

However, " '[u]nder Idaho law, part performance per se does not remove a contract from operation of the [S]tatute of [F]rauds. Rather, the doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel.' " *Chapin*, 144 Idaho at 396, 162 P.3d at 775 (quoting *Lettunich v. Key Bank Nat. Ass'n*, 141 Idaho 362, 367, 109 P.3d 1104, 1109 (2005)). More importantly, "[i]t is well recognized that specific performance will not be granted unless the contract is complete, definite[,] and certain in all its material terms, or contains provisions which are capable in themselves of being reduced to certainty." *Locklear v. Tucker*, 69 Idaho 84, 90, 203 P.2d 380, 383–84 (1949). "Equitable estoppel generally, and the doctrine of part performance specifically, *assume the existence of a complete agreement*." *Chapin*, 144 Idaho at 396, 162 P.3d at 775 (emphasis added).

In its decision below, the district court rejected 616's part performance argument because it determined the APA and incorporated Asset List omitted two material terms necessary to form a lease agreement—and without all material terms—there was not a complete lease agreement which *could* be specifically enforced by way of part performance. The district court's analysis is correct. As discussed above, the writings 616 points to do not form a complete lease contract because two material terms are missing. At no point has 616 argued, or provided evidence of, a lease contract—complete, definite, and certain in all its material terms—that was agreed on orally or through a composite of oral and written language. Thus, the doctrine of part performance simply does not apply because before it can, there must be a complete lease contract between the parties that *could* be specifically enforced in equity. As noted above, in the absence of a lease contract, when 616 took actual possession of, and made improvements to, Suite 100 at the underlying property—and 616 was not treated as a trespasser—616 gained, at most, the right to a tenancy at will. *See Lewiston Pre-Mix Concrete, Inc. v. Rohde*, 110 Idaho 640, 644–45, 718 P.2d 551, 555–56 (Ct. App. 1985).

In summary, and for the reasons above, we affirm the district court's decision to grant summary judgment because the APA and Asset List did not convey to 616 a leasehold interest in any part of the underlying commercial parcel. As the district court concluded, the writings are missing two material terms necessary to form a lease contract and do not satisfy the Statute of Frauds.

15

**B. The district court did not err in its decision on PPC's, Mae's, and Ellis' (individually and as trustee) joint motion for attorney fees under the APA and Idaho Code section 12-120(3).**

Turning now to the cross-appeal, PPC, Mae, and Ellis (individually and as trustee) jointly appeal the district court's decision on their motion for attorney fees under the APA and Idaho Code section 12-120(3). Although it is unclear whether each Defendant/Counterclaimant is cross-appealing under both potential bases for attorney fees, we need not address that problem because Defendants/Counterclaimants have not shown the district court abused its discretion in ruling on their motion. Thus, the district court's decision is affirmed.

1. PPC, Mae, and Ellis (individually and as trustee) have not shown that the district court abused its discretion in denying attorney fees under the APA regarding the leasehold dispute or in awarding "$0" in "reasonable" attorney fees on the Notarial Acts claim.

First, we address the district court's decision regarding PPC's, Mae's, and Ellis' (individually and as trustee) joint request for attorney fees under the APA. Paragraph nineteen in the APA provides for attorney fees to a "party" to the APA if they are required to, or do, maintain, or defend any claim or cause of action "against the other arising out of or relating to" the APA *and* if they are the "prevailing party":

> **19. ATTORNEY'S FEES AND COSTS:** In the event either *party to this Agreement is required to, or does, maintain or defend any claim or cause of action against the other arising out of or relating to this Agreement*, *then the prevailing party in any such action* or arbitration *shall be entitled to recover from the other party all reasonable attorney's fees incurred*, including pre-litigation attorney's fees and costs, as well as attorney's fees and costs on appeal, in addition to all reasonable costs and expenses associated with the enforcement of this Agreement.

(Bold in original and italics added.)

As to the leasehold dispute, the district court denied attorney fees under the APA to PPC, Mae, and Ellis (individually and as trustee). The district court first explained that based on the terms of the APA, the only parties that could qualify for fees under it were the parties to it: 616, PPC, and Ellis (individually). The district court then explained that the leasehold dispute was not between 616, PPC, and Ellis (individually). Instead, the dispute was between 616 and the only party who *could* convey to 616 a leasehold interest in the underlying property—the Ellis Family Trust. Ellis did not sign the APA in his capacity as trustee of the Ellis Family Trust, thus, the Ellis Family Trust was not a "party" to the APA and could not collect fees under it. The district court further reasoned that it would be inappropriate to allow the other Defendants/Counterclaimants to

16

stand in the shoes of the only party who prevailed in the leasehold dispute—the Ellis Family Trust—to then collect fees under the APA related to that dispute.

On cross-appeal, PPC and Ellis (individually) maintain that the district court erred in denying them fees under the APA because "the gravamen of the legal dispute" was between them and 616 "as adverse parties seeking an interpretation of their contract, and that declaratory relief, by itself, is a dispute between the parties to the contract at issue." In other words, PPC and Ellis (individually) argue that they *did* have a "dispute" with 616 under the APA as to whether it conveyed a leasehold interest, and that PPC successfully defended "its" position that the APA did not convey a lease interest to 616. Thus, according to PPC and Ellis (individually), they were prevailing parties in the leasehold dispute and are entitled to fees under the APA. When the district court did not award fees, PPC and Ellis (individually) argue the district court "failed to act consistently with applicable legal standards and, therefore, abused its discretion."

Attorney fees may be awarded to the prevailing party when provided for by contract. *See* I.R.C.P. 54(e)(1). "Where a valid contract between the parties contains a provision for an award of attorney fees, the terms of the contract establish a right to attorney fees." *Gangi v. Debolt*, 168 Idaho 815, 819, 488 P.3d 483, 487 (2021). Here, the terms of the APA entitle 616, PPC, and Ellis (individually) to reasonable attorney fees if they *prevail* in maintaining or defending a claim or cause of action "against the other" arising out of or related to the APA. Consistent with the contractual terms that define the scope of the right, the district court determined, in its discretion, that PPC and Ellis (individually) did not prevail in a claim or cause of action "against" 616 in the leasehold dispute because neither PPC nor Ellis (individually) had any interest in the real property at issue. The district court reached this decision through an exercise of reason.

Nevertheless, PPC and Ellis (individually) cite *Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989) for the proposition that they "must" be "adverse" to 616 in the leasehold dispute because the Idaho Declaratory Judgment Act requires, as a foundation, the parties to the action to be in an adversarial position, i.e., that the parties seeking declaratory relief "have such a personal stake in the outcome of the controversy that a meaningful representation and advocacy of the issues is ensured." In other words, PPC and Ellis (individually) argue that they are *in fact* "adverse" to 616 in the leasehold dispute because 616 made them both parties to the leasehold dispute in 616's complaint for declaratory relief—*and* PPC made itself a party to the

17

same when Ellis (as trustee) counterclaimed to quiet title and for declaratory relief. This contention is meritless.

The pleadings in the record reflect that both sides were initially mistaken about the true owner of the underlying commercial parcel in which 616 claimed a leasehold interest. Defendants/Counterclaimants eventually amended their pleadings and clarified that the Ellis Family Trust was the owner. However, in doing so, PPC added itself to the counterclaims for declaratory relief and to quiet title in the leasehold dispute made by Ellis (as trustee). Moreover, based on the record, 616 apparently never amended its complaint to clarify that it claimed a leasehold interest in property owned by the Ellis Family Trust—not PPC or Ellis (individually). That the pleadings were not better tailored to identify the parties with interests at stake—through an amendment or motion to dismiss—does not thereby endow PPC and Ellis (individually) with an interest adverse to, or "against" 616 in the leasehold dispute that the district court was required to blindly accept.

Instead, the district court was within its discretion to recognize that the only adverse parties in the leasehold dispute were those parties that had "a personal stake" in its outcome: 616 and Ellis in his capacity as trustee of the Ellis Family Trust. *See Miles*, 116 Idaho at 641, 778 P.2d at 763. In addition, the district court acted consistently with the terms of the APA when it denied PCP and Ellis (individually) fees under it (i.e., the standards applicable to the district court's decision), and it reached its decision through an exercise of reason. Thus, we conclude, the district court did not abuse its discretion when it denied PPC and Ellis (individually) fees under the APA in the leasehold dispute.

Next, PPC and Ellis (individually) also argue that they should, at a minimum, be awarded attorney fees under the APA for pursuing and prevailing on their Notarial Acts claim. 616 responds that PPC and Ellis (individually) failed to apportion the attorney fees incurred in connection with that claim, thus, the district court properly declined to award them. *See, e.g.*, *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 273, 483 P.3d 313, 330 (2021) (requiring apportionment of fees incurred in connection with claims falling under Idaho Code section 12-120(3)). 616 is correct that PPC and Ellis (individually) did not apportion their request for attorney fees under their Notarial Acts claim. However, we need not decide whether the failure to apportion here bars relief because there is a more fundamental problem: PPC and Ellis (individually) have not challenged the district

court's calculation of what it found to be a "reasonable" attorney fee for prevailing on the Notarial Acts claim.

The district court determined that PPC and Ellis (individually) prevailed on their Notarial Acts claim because Shannon Smith's notarial act on the APA was declared void. Contrary to the suggestion of PPC and Ellis (individually), the district court did not "deny" that they were entitled to "reasonable" attorney fees under the APA for prevailing on their claim. Instead, the district court found, in its discretion, that the "reasonable" amount of fees to award PPC and Ellis (individually) for prevailing on that claim was "$0." The district court reached this decision by explaining that neither PPC nor Ellis (individually) had any interests at stake—even under their Notarial Acts claim—because they had completed the sale of PPC's assets through the APA and PPC was no longer a going concern.

"The calculation of reasonable attorney fees is within the discretion of the trial court." *Bott v. Idaho State Bldg. Auth.*, 128 Idaho 580, 592, 917 P.2d 737, 749 (1996). "When awarding attorney's fees, a district court must consider the applicable factors set forth in I.R.C.P. 54(e)(3) *and may consider any other factor that the court deems appropriate*." *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 747, 152 P.3d 614, 618 (2007) (emphasis added) (quoting *Hines v. Hines,* 129 Idaho 847, 855, 934 P.2d 20, 28 (1997)); *see* I.R.C.P.5 54(e)(3)(L). Courts need not address every factor under Rule 54(e)(3) in writing, *Parsons*, 143 Idaho at 747, 152 P.3d at 618, but "it must appear that there is a reasoned application of those factors in the trial court's decision on the amount of attorney fees to be awarded." *Allen*, 169 Idaho at 132, 492 P.3d at 1091.

Here, the district court decided in its discretion that the dispositive "factor" for awarding "$0" as a "reasonable" fee for prevailing on the Notarial Acts claim was because PPC and Ellis (individually) did not have a real stake in this lawsuit. On cross-appeal, PPC and Ellis (individually) did not challenge the district court's application of the factors under Rule 54(e)(3) in reaching this finding—or the district court's calculation of a "reasonable" attorney fee—with anything more than a conclusory argument. Thus, we conclude that PPC and Ellis (individually) have failed to carry their burden to demonstrate error and explain why the district court's decision on this issue was an abuse of discretion. *See Owen v. Smith*, 168 Idaho 633, 647, 485 P.3d 129, 143 (2021).

19

2. PPC, Mae, and Ellis (individually and as trustee) were not entitled to attorney fees below under Idaho Code section 12-120(3) because they failed to apportion their request for fees based on claim or party.

Second, we address PPC's, Mae's, and Ellis' (individually and as trustee) argument that the district court erred in denying them attorney fees related to the leasehold dispute under Idaho Code section 12-120(3) because—contrary to the district court's reasoning—the "gravamen" of the claims underlying that dispute involved a "commercial transaction," i.e., a commercial lease transaction. However, we need not reach the merits of this argument because even if it is correct, the district court was not required to award Defendants/Counterclaimants attorney fees under section 12-120(3) because Defendants/Counterclaimants failed to apportion their request below. Thus, the district court's denial of fees under section 12-120(3) is affirmed.

Idaho Code section 12-120(3) provides that the prevailing party "[i]n any civil action to recover on . . . any commercial transaction . . . shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." *See Knudsen*, 168 Idaho at 272, 483 P.3d at 329. "[R]ecovery of attorney's fees under section 12-120(3) hinges on 'whether the gravamen of a claim is a commercial transaction.' " *Knudsen*, 168 Idaho at 272, 483 P.3d at 329 (alteration added) (quoting *Sims v. Jacobson*, 157 Idaho 980, 985, 342 P.3d 907, 912 (2015)). However, we have long said that "[w]here fees were not apportioned between a claim that qualifies under [Idaho Code section] 12-120(3) and one that does not, no fees are to be awarded." *Rockefeller v. Grabow*, 136 Idaho 637, 645, 39 P.3d 577, 585 (2001); *see also Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho, LLC*, 154 Idaho 812, 815, 303 P.3d 171, 174 (2013); *Knudsen*, 168 Idaho at 273, 483 P.3d at 330.

Here, even if the competing claims underlying the leasehold dispute qualify for fees under section 12-120(3), Defendants/Counterclaimants are not entitled to a reversal of the district court's denial of fees for a similar reason that we refused to reverse the denial of Simplot's motion for attorney fees under section 12-120(3) in *Knudsen*, 168 Idaho at 273–74, 483 P.3d at 330–31: Defendants/Counterclaimants and Simplot both failed to apportion their fees so that the district court *could* award attorney fees appropriately under section 12-120(3). In *Knudsen*, we declined to reverse the district court's denial of Simplot's motion "because Simplot provided no basis on which the fees between the various claims could be apportioned." 168 Idaho at 273–74, 483 P.3d at 330–31. And we explained that "[t]he district court was not required to sua sponte apportion

20

fees" where Simplot made "no argument as to how or why the fees should be apportioned." *Id*. The same reasoning applies here.

When Defendants/Counterclaimants moved for attorney fees below, they did not apportion their requested fees based on party or claim, and they did not make any argument for apportionment. Instead, Defendants/Counterclaimants moved jointly, arguing that they were collectively entitled to attorney fees under the APA, Idaho Code section 12-120(3), and other statutes in a lump sum of "$68,346.47" for "successfully defending the claims asserted against them and in pursuing their counterclaim[s]." However, a review of the record reflects that this lump sum incorporated fees related to the Notarial Acts claim; sporadic landlord-tenant disputes between Mae and 616 (under 616's tenancy at will); and discovery, depositions, and various demand letters in a manner that does not apportion fees based on claim or party as it relates to the leasehold dispute. And without that apportionment—or any argument for it by Defendants/Counterclaimants below—the district court was not required to sua sponte apportion fees out of Defendants'/Counterclaimants' lump sum request. *See Knudsen*, 168 Idaho at 274, 483 P.3d at 331. Thus, the district court's decision to deny fees to Defendants/Counterclaimants under section 12-120(3) is affirmed because there was no basis to appropriately award fees.

## C. No party is entitled to attorney fees or costs on appeal.

616 requests attorney fees on appeal as the "prevailing" party pursuant to Idaho Code section 12-120(3). In addition, Defendants/Counterclaimants collectively request attorney fees on appeal and cross-appeal as "prevailing parties" pursuant to the APA and Idaho Code section 12-120(3). However, "[g]iven the mixed results in this case," *Sommer v. Misty Valley*, 170 Idaho 413, __, 511 P.3d 833, 852 (2021), there is no overall "prevailing" party. Thus, no party is entitled to attorney fees or costs on appeal. *See Tapadeera v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012) ("[A] respondent should carefully consider whether to file a cross-appeal because losing the cross-appeal may result in not being able to recover attorney fees incurred in defending the appeal.").

## IV. CONCLUSION

For the reasons set out above, we affirm the district court's decision to grant summary judgment, the decision on Defendants'/Counterclaimants' joint request for attorney fees, and the judgment entered. Each party shall bear their own costs on appeal.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN, CONCUR.

21